BENJAMIN WOOD

*v.*

WILLIAM DAVIS.

82  311
124  449
82  311
146  445
82  311
79a  208

1. STATUTE OF FRAUDS—*contract for sale of land.* No formal language is necessary to be used in a memorandum in writing of a contract for sale of land. Anything from which the intention of the parties may be gathered will be sufficient to take it out of the Statute of Frauds.

2. But the writings, notes or memoranda, such as they may be, must contain, on their face, or by reference to others, the names of the parties, vendor and vendee, a sufficiently clear description to render it capable of identification, with terms of sale, and conditions, if any; and price to be paid, or other consideration given.

3. Where a party, desiring to purchase land, applies to the agent of the owner and makes an offer definite as to price, terms, etc., and the agent submits the offer to his principal by letter, and afterwards writes to the purchaser that the owner has accepted the offer, and the agent sends to the principal a deed to be executed by him in accordance with the terms of such offer, which deed is executed by the principal and returned to the agent, and the purchaser, upon receiving the letter notifying him that his offer is accepted, goes to the agent to close up the transaction, and the agent then refuses to consummate the trade, these facts constitute a valid contract, not within the Statute of Frauds, for a breach of which the purchaser can maintain a suit for damages against the owner of the land.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. G. B. & F. W. Burnett, for the appellant.

Messrs. Gillespie & Happy, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of assumpsit, brought by William Davis, in the circuit court of Madison county, against Benjamin Wood, to recover damages for a failure to perform a contract for the sale and conveyance of a certain quarter section of land in Piatt county.

To the declaration the defendant pleaded *non assumpsit* and the Statute of Frauds.

The jury found in favor of the plaintiff. The court over-ruled a motion for a new trial, and rendered judgment upon the verdict.

No objection is made to the instructions, or the ruling of the court upon the admission or rejection of evidence, but the point relied upon by appellant is, that no sufficient note or memorandum of the contract was made and signed as required by the Statute of Frauds and Perjuries.

Numerous cases have arisen in this and other courts which involved the construction of the statute, and the principles which must control in the construction of the statute, have been elaborately discussed, and rules established which would seem to be sufficiently comprehensive to embrace any case that might arise.

In *McConnell* v. *Brillhart*, 17 Ill. 354, where the authorities are fully cited, it was held, that no formal language was required; anything from which the intention may be gathered, as in other contracts, will be sufficient; that any kind of a writing, from a solemn deed to mere hasty notes or memoranda in books, papers or letters, will be regarded sufficient.

But the writings, notes or memoranda, such as they may be, must contain, on their face or by reference to others, the names of the parties, vendor and vendee, a sufficiently clear and explicit description of the property to render it capable of identification from other of like kind, together with the terms,

conditions (if there be any,) and price to be paid, or other consideration to be given.

The rules here announced have been sanctioned in subsequent cases. *Cossitt* v. *Hobbs*, 56 Ill. 231.

The question arising upon this record is, whether the evidence introduced is sufficient to bring the case within the rules announced.

If such a contract was established as will take it out of the operation of the statute, then the recovery can be sustained, otherwise not.

It appears, from the evidence, that the land was advertised for sale by H. K. Gillespie, a farmer, who resided near it, but he was instructed by appellant to refer purchasers to a Mr. Reed, who resided at Monticello, twelve miles distant from the land, and who was a member of the law firm of Reed & Barringer. In the fall of 1874, appellee called upon Mr. Reed, to purchase the land, and was informed that he was the agent, and the price was $24 per acre. This appellee declined to pay, but, upon the solicitation of Reed, made an offer of $20 per acre, $1500 payable May 1, 1875, and the remainder in one year from that time. Mr. Reed received the offer, and agreed to send it to Mr. Wood, the owner.

A short time after this interview, appellee received a letter from Reed & Barringer, dated October 6, 1874, in which they said: "We have just received a letter from Mr. Wood concerning the land, and we think we will be able to make the sale to you. Have written to him to make his terms more explicit."

A few days after this letter was received, appellee called upon Reed, and was informed that nothing more had been heard from Mr. Wood, but he at once wrote another letter, which was read to appellee after it was written and before it was mailed.

Within a short time after this interview, appellee received from Reed & Barringer a letter bearing date November 18, 1874, in which they said: "We received a communication from Benjamin Wood yesterday. He accepts the proposition

of $20 per acre. We have sent him a deed to sign and return to us."

From the evidence of Reed, it appears a deed from Wood to appellee was properly executed and sent to him for delivery.

Three letters written by Wood to Reed were read in evidence, which show Reed was authorized to sell the land, but the letter which Reed & Barringer say, in their communication of November 18, was received from Wood, in which he accepted the proposition of $20 per acre, was not produced, although he was notified to produce the same.

After appellee received the letter of November 18, he called upon Reed & Barringer, for the purpose of closing up the transaction. Barringer then informed him they had received an offer of $22.50 per acre, and he would have to see Reed, and, upon seeing Mr. Reed, he was told, "Mr. Barringer is the man you want to see." He went to Barringer again, but could get no satisfaction in regard to the matter.

The conclusion is inevitable, from the evidence, that the sole reason the sale to appellee was not consummated, was on account of an offer of $2.50 per acre more for the land than appellee had contracted to pay, which the parties accepted, and shortly after the attempt of appellee to close the transaction, conveyed the land to another party.

It is, however, urged by appellant that the memoranda relied upon by appellee contain no description of the land.

The advertisement of the land for sale by Gillespie, in which it was properly described, may be regarded as a part of the transaction, upon which appellee can rely. But aside from this, it is not disputed that the deed which Wood executed and forwarded to his agent, contained an accurate description of the premises, and if there was no other description of the premises than this, the deed would be sufficient.

It is also urged that the time the payments were to be made, and the amount of each, were not definitely settled, as shown by the memoranda. The offer made by appellee for the land was $20 per acre—$1500 May 1, 1875, and the balance in one year from that time.

In the letter of November 18, written by Reed & Barringer, it is said: "We received a communication from Benjamin Wood yesterday. He accepts the proposition of $20 per acre." This letter removes all doubt and uncertainty in regard to the amount and times of payment; but, to destroy the force and effect of this letter, Reed claims, in his testimony, that Barringer was not authorized by him to write the letter. The facts, however, connected with the transaction are enough to warrant the conclusion that Barringer was acting with authority. He and Reed were partners in business. The letter of November 6, written by Barringer, is conceded to have been authorized.

When appellee called to close up the trade, it was not claimed or contended that Barringer had no authority to act in the premises, but Reed himself referred appellee to Barringer as the proper person to see. Under these circumstances, Reed is estopped to deny Barringer's authority to act in connection with himself.

But, if the letter of November 18 was not authorized by Reed, who was the agent of appellant—if it be true, as the evidence seems to indicate, that Wood himself wrote a letter to Reed accepting the proposition of appellee, and this was followed by the execution and acknowledgment of a deed from Wood to appellee, which was forwarded to Reed by appellant, and placed in his hands for delivery—these facts might be sufficient to constitute a contract.

It is also urged that the action can not be sustained against Wood alone, as the contract was made by the agent of Wood & Barco, they owning the land jointly. The evidence does not connect Barco with the transaction. His name nowhere appears, except in some of the letters from Wood to Reed.

Wood was the contracting party, and whether he owned the whole or only a part of the title to the land, could make no difference. If he contracted to sell and convey, he would be bound to comply with the contract or respond in damages.

After a careful examination of the whole record, we are satisfied the evidence sustains the verdict, and the judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT dissenting.