## A. B. Gaines v. E. J. McAdam.

1. WAIVER—*Of the Right of Objection or Exception.*—When parties agree upon a statement of facts embracing the merits of the controversy, upon the decision of which judgment is to be rendered, all objections as to the form of proceeding are waived, unless expressly reserved.

2. SAME—*Of Defects in the Pleadings.*—An agreed statement of facts waives all defects in the pleadings, even where the pleadings are referred to as a part of the statement, and such statement authorizes a judgment on the merits, the same as if they were duly presented by proper pleadings.

3. STATUTE OF FRAUDS—*What is a Sufficient Memorandum in Writing.*—A telegram signed by a landlord and sent to his agent in response to an offer contained in a written communication to accept a lease, to which such telegram refers, is a sufficient memorandum in writing to take an oral lease out of the statute of frauds.

4. SAME—*Sufficiency of the Memorandum.*— Any writing from which

the intention can be gathered, as in other contracts, will be sufficient as a memorandum to take the case out of the statute of frauds.

5.  SAME—*As to the Time the Memorandum Must Be Executed.*—A memorandum, to take a case out of the statute of frauds, may be executed at any time subsequent to the making of the contract by the parties, and before action is, brought upon it.

6.  LANDLORD AND TENANT—*What is Sufficient to Constitute a Surrender.*—The fact that the tenant left the key of the demised premises with a clerk in the office of the landlord's agent when he removed from the premises, and the subsequent unsuccessful efforts of the agent to rent the premises again, are not sufficient to constitute a surrender of the premises by the tenant. ·

7.  SAME—*When a Landlord's Consent to a Surrender Can Not Be Inferred.*—A landlord's consent to a surrender of the demised premises can not be inferred from the unsuccessful attempt of his agent to rent the premises after the tenant has vacated them.

8.  SAME—*Effect of an Unsuccessful Attempt to Lease to Another.*— The declaration of a landlord that his tenant had given up his lease, accompanied by an unsuccessful attempt to lease the premises to another, is not conclusive evidence that their relation has ceased.   There must be an agreement to that effect or the lease continues in force.

**Assumpsit,** for the recovery of rent.   Trial in the Superior Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding.   Finding and judgment for defendant.   Appeal by plaintiff.   Heard in this court at the March term, 1898.   Reversed and judgment entered in this court for $525 and costs.   Opinion filed December 6, 1898.

STATEMENT.

This is an action of assumpsit by appellant against appellee for the recovery of five months' rent at the rate of $75 per month.   The declaration contains a special count and the common counts for use and occupation.   The special count alleges, in substance, that, October 15, 1893, the plaintiff demised to defendant, by oral lease, certain described premises situated in Hot Springs in the State of Arkansas, for the term of one year from November 15, 1893, at a rental of $900 per annum, payable in monthly installments of $75 each, in advance; that defendant entered the demised premises November 15, 1893, and that October 15, 1894, the sum of $525, being the reserved rent for seven months, remained due and unpaid.   The defendant pleaded the general issue and the statute of frauds.   The cause was

submitted to the court for trial without a jury, and the court found the issues for the defendant, and rendered judgment accordingly.    The evidence consisted solely of the following agreed statement of facts :

" It is hereby stipulated and agreed by and between the parties to the above entitled cause, by their respective attorneys, for the purpose of the trial of said cause, that J. W. Corrington was the agent of A. B. Gaines, plaintiff in this suit, and that W. G. Maurice was the agent of E. J. McAdam, defendant in this suit, and that each was duly authorized to represent his principal in the renting of the store building of A. B. Gaines, situated in the city of Hot Springs, in the State of Arkansas, to the extent hereinafter shown.

" That on or about the 16th day of October, 1893, E. J. McAdam, defendant herein, wrote W. G. Maurice a certain letter, in words and figures as follows :

'RIVER FOREST, 10–16, '93.

FRIEND BILLY : We have closed at Mackinac, Oct. 1st, after a fair season. Will you kindly look up a place for me ? I would like to get that N. Y. Millinery store. Would you kindly see about it for me ? I want to run two places this season, if possible, one at each end of the street. If Woodcock's word is any good I will be back at the old stand I was at last season. Don't say anything to old Jim about the matter, as I have reasons which will explain when I see you. Think Ware & Ware are the agents. I would rent that place by the year if I could get it at a reasonable figure. Of course would rather rent by the month or season, if possible.

E. J. McADAM.'

" That shortly after the receipt of said letter and some days prior to the 11th day of November, 1893, said Maurice called upon J. W. Corrington and asked said Corrington if he would lease a certain storeroom belonging to A. B. Gaines, the plaintiff, to E. J. McAdam, the defendant, for six months, and that said Corrington positively refused to lease or rent the room for less than a year; that Corrington offered to rent the premises to McAdam for one year at $900, payable in monthly installments of $75 each, said installments payable on the first of each month, in advance.

" That after the conversation between Mr. Maurice and Mr. Corrington, Mr. Maurice communicated what was said at the interview between himself and Mr. Corrington to E. J. McAdam, the defendant.

" That on the 11th day of November, 1893, in response to the communication sent to McAdam by Maurice, said Maurice received a telegram from McAdam, which is in the words and figures as follows:

'CHICAGO, ILL., Nov. 11, 1893.

To W. G. MAURICE,
                    Ht. Springs.
    Take Gaines' store six months if can't lease one year.
                                        E. J. McADAM.'

" That after said Maurice received above mentioned telegram on the 11th day of November, 1893, on the same day he called and had a conversation with Mr. Corrington, and Mr. Corrington again refused to lease the Gaines store for less than a year; whereupon said Maurice said that he would take the Gaines store for Mr. McAdam for one year from November 15, 1893, on the terms above set forth, and handed the telegram he had received from said McAdam to said Corrington, and then said Maurice telegraphed Mc-Adam that he had rented the store room for him for one year from November 15, 1893.

" That on the 13th day of November, 1893, said Maurice received another telegram from E. J. McAdam in words and figure as follows:

'OAK PARK, ILL., 11–13, '93.

To W. G. MAURICE.
    Yes, lease it; re-rent half if possible; sent you check.
                                        E. J. McADAM.'

" Which telegram Maurice handed to Corrington on the date on which he received it.

" Shortly after the 13th day of November, 1893, said McAdam sent his stock forward and took possession of said Gaines' storeroom, and continued to occupy the same for five months.

" That rent was paid for the store by McAdam for five months, from November 15, 1893, monthly, in advance; that prior to April 15, 1894, without the knowledge of said J. W. Corrington, the stock of goods was removed from said store to another location, and McAdam left the key with a clerk at the office of J. W. Corrington, Mr. Corrington not being in. Gaines' storeroom was closed shortly after the 14th of April, 1894, and remained closed until after the 15th day of November, 1894, during which time efforts were made by said J. W. Corrington, agent of A. B. Gaines, to re-rent said store room, but that he was unable to secure a tenant. That no writings were made by either party other than those mentioned above.

"That the major portion of the business done in the city of Hot Springs is done between the first days of December and the first days of May, the season being open during that time, and that there is little business done during the balance of the year, and this is especially the case with the business conducted by said McAdam, which was the sale of curios and novelties.

"That the statute of frauds was in force in the State of Arkansas at the time of the negotiations herein mentioned in November, 1893, and is still in force in that State, and that said statute of frauds is substantially the same as the statute of frauds in the State of Illinois.

"WILBER, ELDRIDGE & ALLEN,
Attorneys for Plaintiff.
"THATCHER & GRIFFIN,
Attorneys for Defendant."

WILBER, ELDRIDGE & ALLEN, attorneys for appellant.

THATCHER & GRIFFIN, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

It being agreed that the statute of frauds of the State of Arkansas is substantially the same as the like statute in this State, the question is whether there is any memorandum or note in writing of the contract sued on, signed by appellee, within the meaning of section 2 of our statute of frauds, which is as follows:

"No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them, for a longer term than one year, unless some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party," etc.

It is admitted in the stipulation that each of the agents, Corrington and Maurice, was duly authorized to do what he did "in the renting of the store building of A. B. Gaines, situated in the city of Hot Springs, in the State of Arkansas." What each did in the matter appears from the stipulation to be that Corrington, appellant's agent, some days prior to November 11, 1893, offered to rent the premises to

McAdam, the appellee, for one year for $900, payable in monthly installments of $75 each, payable on the first of each month in advance, and that Maurice, appellee's agent, November 11, 1893, accepted the offer for one year from November 15, 1893. Each agent having "been duly authorized" to do what he did in the premises, there was thus created an oral contract, good at common law, and not void, but merely non-enforcible, by virtue of the statute, in the absence of some note or memorandum thereof in writing, signed by the party sought to be charged, or by his lawful authorized agent. Browne on Statute of Frauds, 4th Ed., Sec. 344; Wheeler v. Frankenthal, 78 Ill. 124.

Was there such note or memorandum?

"Maurice communicated what was said at the interview between himself and Corrington to E. J. McAdam," the appellee. He therefore communicated to appellee, among other things, that Corrington offered to rent "a certain store belonging to A. B. Gaines. the plaintiff, to E. J. Mc-Adam, * * * for one year at $900, payable in monthly installments of $75 each, said installments payable on the first of each month in advance."

The communication from Maurice to appellee was necessarily either by letter or telegram, probably the former, because the stipulation shows that Maurice, the agent, was in Hot Springs, Arkansas, and appellee in Chicago, Illinois.

Appellee, after receiving the communication from Maurice, and with the same before him, sent to Maurice this telegram:

"CHICAGO, Nov. 11; 1893.
To W. G. MAURICE, Hot Springs:
Take Gaines' store six months, if can't lease one year.
E. J. McADAM."

Maurice received the telegram November 11, 1893, the day it was sent, and immediately showed it to Corrington, appellant's agent, and rented the store on the terms proposed by Corrington, for one year from November 15, 1893.

November 13, 1893, after Maurice had rented the store, he received another telegram from McAdam, as follows:

Gaines v. McAdam.

"OAK PARK, ILL., 11–13, '93.

To W. G. MAURICE:

Yes, lease it; re-rent half if possible—sent you check.

E. J. McADAM."

It thus appears that appellee, having before him the written communication of his agent, in which was stated what occurred at the interview between him and the appellant's agent, in which interview the names of the parties, "the store room belonging to A. B. Gaines," and the terms on which such store room was offered to be rented, are all fully stated, accepted the offer by written telegrams signed by him.

Appellee's counsel objects, "There is nothing in the record whatever to show that Gaines' store room, mentioned in the agreed statement of facts, was the land mentioned in the declaration." This objection is based on the fact that the premises alleged to have been leased are described in the declaration as "lot 42, in block 89, in the city of Hot Springs," etc. But, as stated by appellee's counsel, in their argument, "The case was tried by the judge, a jury being waived, upon an agreed statement of facts." The statement contains no reservation of the right of objection or exception. This being the case, the objection can not prevail.

In Kimball v. Preston, 2 Gray, 567, the court say: "It is a well-settled rule of practice that when parties agree upon a statement of facts embracing the merits of the controversy, upon the decision of which judgment is to be rendered, all objections as to forms of proceeding are waived, unless expressly reserved." Citing Haven v. Foster, 9 Pick. 112, and Ellsworth v. Brewer, 11 Ib. 316.

In Esty v. Currier, 98 Mass. 500, the court say: "But an agreed statement of facts waives all defects in the pleadings, even if the pleadings are referred to as part of the statement, and authorizes a judgment on the merits as if they were duly presented by proper pleadings." To the same effect are Bixler v. Kunkle, 17 S. & R. (Penn.) 298; and Perry v. Murray, 55 Ia. 416.

The telegram from appellee to his agent, Maurice, of date November 11, 1893, "take Gaines' store six months, if can't

lease one year," manifestly referred to the written communication from Maurice to appellee, which the latter had before him, and which, as we think, must be taken in connection with the telegram, in determining whether there was a sufficient memorandum signed by appellee to charge him. The fact that the telegram was addressed to appellee's agent and not to appellant is immaterial, because "letters addressed to a third party, stating and affirming a contract, may be used against the writer as a memorandum of it." Browne on Stat. of Frauds, Sec. 354a.

The telegram signed by appellee and exhibited, as it was, by his agent to appellant's agent, taken in connection with the written communication to which it referred, was, as we think, a sufficient memorandum in writing of the oral contract.

In Wood v. Davis, 82 Ill. 311, which was assumpsit to recover damages for a failure to perform a contract for the sale of land, the statute of frauds was pleaded, and it was objected, among other things, that there was no writing containing a description of the land. The negotiations for the purchase were wholly between the plaintiff and the defendant's agent, and it does not appear that in any communication between them the land had been described, or that reference had been made to any advertisement; but it appeared that the land had been advertised for sale by description, and the court held that the plaintiff might rely on the advertisement, saying: "The advertisement of the land for sale by Gillespie, in which it was properly described, may be regarded as a part of the transaction, upon which appellee can rely." The present case is much stronger in support of the proposition that the written communication from Maurice to appellee is to be regarded as a part of the transaction and read in connection with appellee's telegram, than was the case cited in support of regarding the advertisement as a part of the transaction.

See also Salmon Falls Man. Co. v. Goddard, 14 How. 446, in which the court held that a bill of parcels made by the plaintiff, subsequently to the making of the memoran-

dum in question, and not referring to it, could be resorted to for the purpose of explaining ambiguities in the memorandum.

Appellee's telegram of November 13th may well be regarded as an acceptance of Corrington's proposal, which had been previously communicated to appellee in writing by Maurice. The fact that this telegram was sent after the contract had been made by the agents, can not affect its sufficiency as a memorandum or acceptance to charge appellee. "As to the time when the memorandum must be executed, it is settled that it may be at any time subsequent to the formation of the contract by the parties, and before action brought." Browne on Stat. of Frauds, Sec. 352a.

In Cossitt v. Hobbs, 56 Ill. 231, the court say: "Any writing from which the intention can be gathered, as in other contracts, will be sufficient." See also Browne on Stat. of Frauds, Sec. 354.

The intention of appellee to accept the offer of appellant's agent, and his actual acceptance of it, is, we think, clearly shown by the agreed statement of facts.

Appellee's counsel contend that the leaving the key of the premises with a clerk in Corrington's office when appellee removed from the premises, and the subsequent unsuccessful efforts of Corrington to rent the premises, are evidence of a surrender of the premises to appellant.

These facts were not sufficient to constitute a surrender. The landlord's consent to a surrender can not be inferred from the unsuccessful attempt of his agent to rent the premises. Woodfall on Landlord and Tenant, Sec. 303; Thomas v. Nelson, 69 N. Y. 118, 121.

"The declaration of a landlord that his tenant had given up his lease, accompanied by an unsuccessful attempt to lease to another, is not conclusive evidence that their relation had ceased. There must be an agreement to rescind, or the agreement continues in force," etc. Milling v. Becker, 96 Pa. St. 182.

In Humiston et al. v. Wheeler, Chicago Legal News, of date November 5, 1898, not yet reported, the court held:

" In case of an abandonment without fault of the landlord, or in consequence of his act, he may re-enter and again rent the premises and credit the lessee with the proceeds, and his so taking possession does not relieve from the payment of rent." Citing Wood on Landlord and Tenant, Sec. 477, and 12 Am. and Eng. Ency. of Law, 751. The suit was commenced November 1, 1894; the stipulation is that the rent was paid up to April 15, 1894; so that at the time of commencing suit there was due appellant the rent for seven months, or $525.

The judgment will be reversed, and the cause having been tried by the court without a jury, judgment will be entered here in favor of appellant and against appellee for the sum of $525 and his costs of this court. Reversed, and judgment here.