### In re MULLINGS CLOTHING CO.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

#### No. 70.

1. CORPORATIONS ⊚⇒617(2)—LANDLORD AND TENANT ⊚⇒49(1)—DISSOLUTION —EFFECT.

Where a corporation, after entering into a contract of lease, was dissolved before the commencement of the term, such dissolution did not terminate the lease and exonerate the corporation from liability for

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rent; the dissolution being in the nature of an anticipatory breach, warranting the lessor in suing for damages.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2449; Dec. Dig. &⃗617(2); Landlord and Tenant, Cent. Dig. § 117; Dec. Dig. &⃗49(1).]

2. LANDLORD AND TENANT &⃗109(1)—SURRENDER—NATURE OF SURRENDER.

Surrender may be by express agreement of the parties or by operation of law.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. &⃗109(1).]

3. RECEIVERS &⃗91—LEASES—AUTHORITY OF RECEIVER.

Upon insolvency of a corporation and appointment of a receiver, the latter may reject a lease previously entered into by the corporation, and a protest to the receiver is unnecessary to protect the lessor's right of action for breach.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 167, 168; Dec. Dig. &⃗91.]

4. LANDLORD AND TENANT &⃗109(4)—SURRENDER—OPERATION OF LAW.

After a corporation entered into a contract of lease, the directors voted for dissolution, and on petition therefor, and for the winding up of the corporation, a receiver was appointed by the state court. The receiver repudiated the lease, and, after paying the rent due for the last month under the old tenancy, he delivered the keys to the purchaser of the corporate property, which remained in the demised premises. The purchaser retained the premises for one month, paying the old rental, and then vacated the same, delivering the keys to the lessor, who entered and took possession. Thereafter the corporation was adjudicated a bankrupt, whereupon the lessor presented a claim in bankruptcy for breach of contract of lease. The claim was disallowed by the referee, a petition to liquidate the same being dismissed, and a supplemental petition, setting forth the loss on a subsequent lease contract for the same term entered into by the lessor, was also dismissed. Held that, as the lessor was bound to minimize the damages, and as the question of surrender by operation of law usually depends on the intention of the parties, there was no surrender by operation of law, for, as such protest to the receiver is unnecessary, it would be useless to protest to the corporation.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 364; Dec. Dig. &⃗109(4).]

5. DAMAGES &⃗62(4)—BREACH OF TENANCY—MITIGATION OF DAMAGES.

Where a tenant breaches an executory contract of lease, the lessor should make efforts to minimize the damage, and may relet the property for a less amount.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 128–131; Dec. Dig. &⃗62(4).]

6. BANKRUPTCY &⃗20(1)—JURISDICTION OF FEDERAL COURTS.

The bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 544) is paramount, and the jurisdiction of the federal courts in bankruptcy is exclusive, supplanting all proceedings under state insolvency laws.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. &⃗20(1); Courts, Cent. Dig. § 1331.]

7. BANKRUPTCY &⃗20(2)—TRUSTEE—POWERS.

Where, after a receiver had been appointed in the state court to wind up the affairs of an insolvent corporation, on petition for dissolution, the corporation was adjudged a bankrupt, and a trustee was appointed, the trustee is entitled to the assets in the hands of the receiver, and is not

&⃗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bound by the receiver's repudiation of a lease entered into by the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ⊗⇒20(2).]

8. **BANKRUPTCY** ⊗⇒314(1)—**CLAIMS—CONTINGENT CLAIM.**

Contingent claims, which are those that at the time of the filing of the petition in bankruptcy it is uncertain whether the bankrupt will ever become liable to pay, are not provable under the Bankruptcy Act of 1898.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469, 471, 478, 483, 485; Dec. Dig. ⊗⇒314(1).]

9. **BANKRUPTCY** ⊗⇒318(2)—**CLAIMS—PROVABLE CLAIMS—BREACH OF CONTRACT OF LEASE.**

By reason of dissolution a corporation breached an executory contract for the lease of premises and thereafter was adjudged a bankrupt. Bankr. Act July 1, 1898, c. 541, § 63b, 30 Stat. 563 (Comp. St. 1913, § 9647), declares that unliquidated claims against a bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate. *Held* that, notwithstanding a covenant to pay rent creates no debt until the time for payment arrives, yet as the corporation was guilty of an anticipatory breach, rendering it liable in damages, a claim therefor might be proven against the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 482; Dec. Dig. ⊗⇒318(2).]

10. **BANKRUPTCY** ⊗⇒314(2)—**CLAIMS PROVABLE—RENT.**

A covenant to pay rent creates no debt until the time stipulated for payment arrives, so that rent accruing under a lease after filing of a petition in bankruptcy, ordinarily, is not provable against the estate as a fixed liability owing at the time of the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 470; Dec. Dig. ⊗⇒314(2).]

Appeal from the District Court of the United States for the District of Connecticut.

In the matter of the bankruptcy of the Mullings Clothing Company. From an order (230 Fed. 681) dismissing the petition of John B. Mullings for a review of the rulings of the referee, petitioner appeals. Order vacated and set aside, with directions.

This cause comes here on appeal from a decree of the United States District Court for the District of Connecticut. The Mullings Clothing Company is a Connecticut corporation, and on December 30, 1914, filed a voluntary petition in bankruptcy, and on the same day was adjudicated a bankrupt. A trustee of the estate was elected and qualified, filing a bond in the sum of $40,000. John B. Mullings, as a creditor of the Mullings Clothing Company, presented a claim against the bankrupt's estate in the sum of $20,000 for breach of contract of lease. Objection to the allowance of the claim was made by the trustee of the bankrupt and by some of the creditors, and the objection was sustained by the referee, who dismissed the petitions to liquidate the claim. A petition to review was heard in the District Court, and an order was entered and the claim disallowed, and the petition for liquidation was dismissed.

Lawrence L. Lewis, of Waterbury, Conn., for appellant.

Terrence F. Carmody, William J. Larkin, Jr., and Walter E. Monagan, all of Waterbury, Conn., for appellee.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROGERS, Circuit Judge (after stating the facts as above). The question for this court to determine is whether a lessor has a provable claim in bankruptcy when the corporation to which he has leased votes to wind up and dissolve and secures the appointment of a receiver in proceedings for dissolution who has repudiated the lease prior to the beginning of the term and prior to the proceedings in bankruptcy.

The claimant, John B. Mullings, was the owner of a building in the city of Waterbury, in the state of Connecticut. On July 25, 1913, Mullings entered into a contract of lease with the Mullings Clothing Company by the terms of which the latter leased a portion of the building for the term of five years from the 1st day of October, 1914, for an annual rental of $12,000, which was payable in monthly installments of $1,000 each month. At the time of the execution of this lease the Clothing Company was in possession of the premises under a prior lease, which was to expire on October 1, 1914, and for which a rental of $800 a month was agreed to be paid.

On August 19, 1914, the directors of the Clothing Company voted to wind up its affairs, and two days later all the stockholders of the company petitioned the state court in Connecticut to appoint a receiver, as authorized under the statutes of the state, and prayed for the dissolution and winding up of the corporation, and such a receiver was appointed. The receiver, acting under instructions of the court which appointed him, repudiated the lease, which was to begin October 1, 1914. The lease provided that, in case the rent should remain unpaid for 10 days after the same became payable under the terms of the lease, the lease would thereby terminate, and the lessor might then recover possession in the manner prescribed by the Connecticut statute relative to summary process, and the necessity of demand on the part of the lessor for the rent and for re-entry for condition broken, as at common law, as well as to that of the actual notice to quit as required by the statute, were expressly waived by the lessee.

The receiver continued in occupation of the premises until the end of October, 1914, and paid $800 rent for that month, which was accepted by the landlord as payment in full for that month. The receiver then turned over the premises to a Mr. James, who had purchased from him the stock and fixtures of the company, and James occupied during the month of November, and paid the landlord $800 rent for the month. The keys were then turned in to the landlord, who entered and took possession. A new tenant was found for the premises, and the landlord executed a lease to him on January 28, 1915. This lease was to begin on March 1, 1915, and to run for a term of five years at an annual rental of $9,000. The rental thus obtained was $3,000 a year less than that which was to be paid under the repudiated lease.

At the first meeting of creditors after the Clothing Company was adjudicated a bankrupt, the lessor offered for proof his claim against the estate in the sum of $20,000 for breach of the contract of lease; the premises at that time not having been relet. It was objected to on the ground that the lease had been rejected by the receiver and that the claim was unliquidated. The referee disallowed the claim, on the

ground that it was for rent to accrue, and therefore a contingent claim, and on the ground that there had been a surrender. Subsequently, and after the lessor had re-leased the premises for the balance of the term for $3,000 a year less rent, a supplemental petition was filed, by the permission of the referee, stating the fact of the re-lease, and asking damages in the sum of $15,000, that amount representing the difference between the rental as fixed by the original lease and the amount which the lessor was able to secure in re-leasing. The District Judge has sustained the rulings of the referee, and has dismissed both petitions for the liquidation of the claim.

[1] The dissolution of a corporation does not terminate a lease under the modern law. In People v. National Trust Company, 82 N. Y. 283 (1880), the court, referring to the claim that the dissolution of a corporation terminated the lease and that the covenant to pay rent ceased to be obligatory, said:

"We do not regard the dissolution as having any such effect. Under the statutes of this state, on the dissolution of a corporation, its assets become a trust fund for the payment of its debts, and these include debts to mature as well as accrued indebtedness, and all engagements entered into by the corporation, which have not been fully satisfied or canceled. These cannot be canceled without the consent of the party holding them, and receivers of dissolved corporations are authorized to retain out of their assets a sufficient amount to cancel and discharge such open and subsisting engagements."

And in 10 Cyc. 1313, speaking of the duty of a receiver of a dissolved corporation, it is said:

"He is not therefore bound, if to do so will be prejudicial to the interests of the creditors, to comply with the covenants of the lease made to the corporation by paying rent in full; but he may allow the lease to be forfeited, and allow the lessor to intervene pro interesse suo to recover his distributive share of any rents accruing prior to the date of the forfeiture."

In Schleider v. Dielman, 44 La. Ann. 462, 10 South. 934 (1892), judgment was claimed against defendants as liquidators of the Louisiana Brewing Company for the sum of $97,209.18, which it was claimed should be paid out of the assets in the hands of the liquidators. It appears that the plaintiff had a contract with the Louisiana Brewing Company, whereby the latter agreed to furnish him with all the beer he required for bottling purposes, and to furnish bottling beer to no one else for and during a term of five years, with the right in him at his option to continue the contract in force for an additional period of five years; but prior to the expiration of the term of five years the corporation by a vote of its stockholders resolved to dissolve, and its affairs were placed in the hands of the defendants as liquidators. The plaintiff claimed the obligation of the contract remained unbroken, notwithstanding the dissolution of the corporation. In the course of its opinion the Supreme Court said:

"It cannot be doubted that the liquidation of a corporation has the immediate effect of terminating all of its purely personal obligations, and of relegating the beneficiaries thereunder to an action in damages in keeping with its covenants."

For reasons, however, not material to the case before us, the judgment of the court below was reversed.

In Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953 (1899), the court held that where a contract is renounced before performance is due, and the renunciation goes to the whole contract and is absolute and unequivocal, the injured party may treat the breach as complete and bring his action at once. The year before this decision was rendered this court had announced the same principle in Marks v. Van Eeghen, 85 Fed. 853, 30 C. C. A. 208 (1898), in an opinion written by Judge Wallace. The doctrine had been announced in England in 1853 in Hochester v. De la Tour, 2 El. & Bl. 678. And before its adoption by the Supreme Court of the United States it had been almost universally accepted by the courts of this country.

In voting to wind up, and in taking steps to dissolve and securing the appointment of a receiver in the state court for that purpose, the corporation lessee renounced the lease and at the same time disabled itself from performing it. It put it out of its power to occupy before the time arrived for the new term to begin. And the law is well settled that, where a party to an executory contract puts it out of his own power to perform it, there is an anticipatory breach, which gives the other party an immediate right of action for the damages. Black on Rescission and Cancellation, volume 1, § 210 (Ed. 1916), and the cases there cited. Hence in Lovell v. St. Louis Life Insurance Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423, the Supreme Court held that, where a life insurance company had terminated its business and transferred its assets and policies to another company, this in itself authorized the insured to treat the contract as at an end, and to sue to recover back the premiums already paid, although the time for the performance of the obligation of the company had not arrived. And Mr. Justice Bradley, speaking for the court, said:

"Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated and demand whatever damage he has sustained thereby."

In Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 721, 744, 117 C. C. A. 503 (1912), this court held that, where a party to a contract puts it out of his power to perform it, there is an anticipatory breach, which gives the other party an immediate right of action for the damages which he sustains thereby, and that where one party is a corporation, its insolvency and the appointment of a receiver, who refuses to further perform, is such a disablement, and the breach dates from the receiver's appointment.

In the case at bar when the directors voted to dissolve the corporation, and all the stockholders united in asking the state court to appoint a receiver under the statute to wind up its affairs, and the receiver was appointed by the court for that purpose, and he repudiated and abandoned the lease, there was in all this such a repudiation of the lease as amounted to an anticipatory breach, and such a putting it beyond the power of the corporation to perform its agreement as gave to this plaintiff an immediate right of action for damages. As this court said in Pennsylvania Steel Co. v. New York City Ry. Co., supra:

"The situation is the equivalent either of an out and out repudiation or of a complete disablement, and in either case the contract is broken."

'In such a case the lessor has a right to sue for the anticipatory breach, and a right to be paid his damages out of the assets in the hands of the liquidating receiver. If that were not true, he would be remediless; the corporation being insolvent and determined to cease business and go out of existence.

In Kalkoff v. Nelson, 60 Minn. 284, 62 N. W. 332 (1895), the corporation had entered into a lease for a term of 10 years at a reserved rent of $6,000 a year. Proceedings were instituted to dissolve the corporation, which had become insolvent, and a receiver was appointed, and the corporation dissolved. The receiver repudiated the lease, which had about 7 years still to run. The lessors claimed the right to damages growing out of the abandonment of the lease and that their claim was provable against the assets of the corporation. This was opposed on the ground that it was contingent and unliquidated. The court held that the lessors had a right to prove their claim and to share in the distribution of the assets. The court said:

"Now, the corporation, by its voluntary dissolution, disabled itself from ever performing the obligations of the covenant in the lease to pay the stipulated rent; and, the receiver having declined to accept the benefits of the lease, abandoned it as an asset of the corporation, and vacated the demised premises, the breach of the contract to pay rent for the unexpired term became total and final. Thereupon a cause of action immediately accrued to the appellants for the recovery of their damages, present and prospective, for the loss of their contract. * * * In the case at bar the corporation has, by its voluntary dissolution, practically committed suicide, and when its estate is administered it ceases to exist. Therefore, if the corporation cannot be held liable for a total breach of its executory contracts, the law has armed it, and all other domestic corporations, with the power to repudiate all the obligations of their executory contracts, by simply instituting proceedings by its stockholders for a voluntary dissolution. It is clear that the corporation must be held liable in damages for this total breach of its executory contract to pay the rent reserved in the lease for the full term. It is true the damages are unliquidated, and that it cannot be shown with absolute certainty that the appellants, except for the breach of the contract by the corporation, would have completely executed the contract on their part, so as to become entitled to its full benefits; but the same difficulties are presented in a greater or less degree in all actions for the recovery of damages for the breach of executory contracts. Any difficulties, real or supposed, in ascertaining the damages in this case, cannot defeat the action."

In People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129 (1897) a corporation leased for a term of 5 years at a rental of $12,-000 a year. The corporation during the term became insolvent, and proceedings were instituted for its dissolution, and a receiver was appointed. Shortly after his appointment he vacated the premises, whereupon the lessor leased to a third party at a rental of $9,000 a year for the balance of the term. The lessor then presented a claim to the receiver for the difference between the amount of rental reserved under the original lease and the amount reserved in the subletting, which was $9,000. The claim was rejected by the receiver, and this the Court of Appeals held was error. The court declared that the lessor's claim "was definite and without any element of contingency."

In McGraw v. Union Trust Co., 135 Mich. 609, 98 N. W. 390 (1904), a bank had made a lease for 5 years, and before the expira-

tion of the term the premises became vacant because of the insolvency of the bank and the appointment of a receiver. The question was whether the lessors were entitled to have their claim for damages arising from the breach of the covenant allowed by the receiver as a claim against the bank's estate. It was claimed that rent which became due after the appointment of the receiver, he having repudiated the lease, did not constitute a claim within the general banking act. The lessors insisted that the claim was not contingent, but absolute, and therefore provable against the assets. The court adopted that view of the matter and said:

"The bank had the right to make the lease when it did, and had it continued in business and abandoned the premises, and the lessor, in accordance with the terms of the lease, had re-entered and relet the premises at a loss, there could be no question but the lessor would have a remedy over against the bank. The following cases—and we think they are in accord with the weight of authorities—recognize the same right in the lessor where the premises are vacated because of the insolvency of the corporation and the appointment of a receiver"—citing a number of cases.

[2] From what has been said it is evident that the lessor had a claim for breach of the lease, which could be enforced against the assets in the hands of the receiver, unless he had lost his right by an acceptance of a surrender of the premises, which extinguished any liability for rent accruing thereafter. Surrender may be by express agreement of the parties or by operation of law. That there was no surrender by express agreement is certain. Was there any by operation of law?

[3] The District Judge was of the opinion that the lessor accepted the surrender of the premises, and he says that the lessor had not protested the repudiation of the lease. But there is nothing in the record which shows that he did not protest. It does not appear whether he protested or did not protest. As the law gives the receiver the legal right to reject the lease, there was no reason why the lessor should protest against the receiver's action. The action of the corporation in voting to go out of business and to dissolve amounted to an abandonment of the lease, subject to the right of the receiver to elect to adopt it, should such a course seem desirable. We do not understand that under such circumstances the lessor is any more bound to make a protest to the corporation than he is bound to make it to the receiver.

[4] In cases of surrender by operation of law the rule is that whether or not a surrender had been effected ordinarily depends upon the intention of the parties. 24 Cyc. 1162; Miller v. Dennis, 68 N. J. Law, 320, 53 Atl. 394; Schulenburg v. Uffelmann, 106 Mich. 453, 64 N. W. 460; Oldewurtel v. Wiesenfeld, 97 Md. 165, 54 Atl. 969. There is nothing in this case indicating that either party understood that the lessor was releasing a claim for $20,000 when he took the keys after the corporation had voted to go out of business and the receiver had repudiated the lease, and it is not reasonable to suppose that he intended to do it, or that it was supposed he intended to do it. The mere acceptance of the keys is not in itself sufficient to show an acceptance of a surrender. Stern v. Thayer, 56 Minn. 93, 57 N.

W. 329; Lucy v. Wilkins, 33 Minn. 441, 23 N. W. 861; Bowen v. Clarke, 22 Or. 566, 30 Pac. 430, 29 Am. St. Rep. 625; Sully v. Schmidt (Super. Ct. Buff.) 11 N. Y. Supp. 694, reversed on other grounds in 147 N. Y. 248, 41 N. E. 514, 49 Am. St. Rep. 659. It has been held, too, that an attempt to relet after abandonment does not in itself show an acceptance of a surrender. Castler v. Henderson, 2 Q. B. D. 575; Redpath v. Roberts, 3 Esp. 225; Joslin v. McLean, 99 Mich. 480, 58 N. W. 467; Gaines v. McAdam, 79 Ill. App. 201. And the doctrine has been announced in a number of cases that an actual reletting of the premises does not show an acceptance of a surrender, and does not release a tenant from his liability. Marshall v. John Grosse Clothing Co., 184 Ill. 421, 56 N. E. 807, 75 Am. St. Rep. 181; Meyer v. Smith, 33 Ark. 627; Miller v. Benton, 55 Conn. 529, 13 Atl. 678; Crown Manufacturing Co. v. Gay, 9 Ohio Decis. (Reprint) 420.

[5] In a number of cases, it is true, it has been held that under certain circumstances a reletting shows an acceptance of the surrender. Gray v. Kaufman, etc., Co., 162 N. Y. 388, 56 N. E. 903, 49 L. R. A. 580, 76 Am. St. Rep. 327; Buckingham Apartment House Co. v. Dafoe, 78 Minn. 268, 80 N. W. 974; Pelton v. Place, 71 Vt. 430, 46 Atl. 63. But, whatever may be the general rule as to the effect of retaining the keys and reletting the premises without making objection, we are satisfied that under the circumstances of this case it did not as a matter of law have the effect of releasing the lessee from its liability for the damages caused by the breach. When a corporation votes to cease business, and institutes proceedings in the courts for its dissolution, and is in default on the rent under a lease which provides that, if the rent remains unpaid for 10 days after the same becomes payable, the lease would thereby terminate and the lessor might re-enter for condition broken as at common law, and thereafter the keys are left with the lessor, and he relets the premises for the balance of the term, these facts, without more, do not show an acceptance of the surrender and a release of the lessee from the obligation to make good whatever loss results from the breach of the lease. The landlord was in duty bound to make reasonable effort to mitigate the damages arising from the breach and this was what he did, and all that he did, in reletting the premises.

[6] But, as before noted, while the winding up proceedings were in the state court, the corporation filed its voluntary petition in bankruptcy. This makes it necessary to consider whether the lessor had the right to prove his claim in bankruptcy.

[7] The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy is exclusive. In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933 (1903). The appointment of the trustee superseded the jurisdiction of the state court, and the trustee was entitled to the assets in the hands of the receiver and took the property of the bankrupt. That he was not bound by the repudiation of the lease by the Connecticut receiver is clear. He was free to adopt or repudiate the lease within a reasonable time as he might deem for the best interest of the estate. He did not see fit to adopt

it and expressly repudiated it. The breach of the contract remained as before, and the landlord still had his right of action. Was it a provable claim in bankruptcy? The District Court, as already stated, thought not because it was a contingent claim..

[8, 9] The Bankruptcy Act of Aug. 19, 1841 (5 Stat. 440, c. 9), and that of March 2, 1867 (14 Stat. 517, c. 176), provided for the allowance of contingent claims. The present act, however, makes no provision for the proof of such claims, and it is well understood that they are not provable. We have no doubt that, while in this case the lessor's claim was unliquidated at the time the petition in bankruptcy was filed, it was not contingent. The cases already discussed show that it was not contingent. A contingent claim is one as to which it remains uncertain, at the time of the filing of the petition in bankruptcy, whether or not the bankrupt will ever become liable to pay it. If it is certain that he is liable to pay it, although it may be uncertain how much he will have to pay, the claim is unliquidated, but it is not contingent. And if one party to an executory contract renounces it without cause, or disables himself from performing it, the other party may consider the contract as broken and bring an action immediately to recover the damages. The liability in such cases is therefore not contingent, but absolutely fixed.

The Bankruptcy Act in section 63a specifies the debts which may be proved and allowed against the bankrupt's estate. There are five classes of debts so specified. We are not now concerned with any of them except the fourth, which reads:

"Those founded upon an open account, or upon a contract express or implied."

It is true that section 63b provides that:

"Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

This, however, relates merely to procedure, and does not define an additional class of debts which are provable. In Dunbar v. Dunbar, 190 U. S. 340, 350, 23 Sup. Ct. 757, 761 (47 L. Ed. 1084) (1903) the Supreme Court declared that:

"That paragraph * * * adds nothing to the class of debts which might be proved under paragraph 'a' of the same section. Its purpose is to permit an unliquidated claim, coming within the provisions of section 63a, to be liquidated as the court should direct."

Is the claim which the landlord is seeking to assert one which arises upon a contract? We have no doubt that it is. A claim for damages for the breach of an executory contract is a claim "founded upon a contract," within the meaning of the statute, and is provable in bankruptcy. This court so held in Re Frederick L. Grant Shoe Co., 130 Fed. 881, 66 C. C. A. 78 (1904), and in Re Stern, 116 Fed. 604, 54 C. C. A. 60 (1902). A claim for damages for the breach of an executory contract of lease, where the lessee is a corporation and has voted to wind up and its stockholders have applied to the court for the appointment of a receiver to wind up its affairs and dissolve the corporation, is, in our opinion, a claim founded upon a contract and prov-

able in bankruptcy. The provable debts are those which existed at the time of the filing of the petition in bankruptcy. Zavelo v. Reeves, 227 U. S. 625, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664 (1913). In this case the obligation incurred by the repudiation of the lease existed at the time of the filing of the petition.

[10] We do not overlook the doctrine that a covenant to pay rent creates no debt until the time stipulated for the payment arrives, and therefore that rent accruing under a lease after the filing of a petition in bankruptcy against the lessee is not provable against his estate as a fixed liability absolutely owing at the time of the filing of the petition. Such a claim we have held to be contingent, and not provable in bankruptcy. That doctrine was applied by this court in Re Roth & Appel, 181 Fed. 67, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270 (1910), and we have no doubt that it was correctly applied. But that doctrine is not at all relevant to the facts of this case. This is an action for breach of contract, occasioned by the steps taken to wind up and dissolve a corporation, which breach occurred prior to the bankruptcy. It has no analogy to a case of ordinary bankruptcy of an insolvent tenant. The filing of the petition in bankruptcy in such a case does not terminate the relation of landlord and tenant, but the tenant remains liable for the future rent as it accrues. It does not end the capacity of the tenant to engage in future business and to acquire other assets which can be reached by the lessee in subsequent proceedings for the payment of the rent which subsequently accrues. It does not involve an abandonment of the lease, and does not disable the tenant from afterwards performing its covenants.

The order dismissing the petition for liquidation of claim, as supplemented and amended, is vacated and set aside, with directions to reinstate the petition, and to take such further steps as may be necessary in accordance with this opinion.