United Cigar Stores Company of America, Appellant, v. J. F. Friend, Appellee.

Gen. No. 8,340.

Opinion filed April 22, 1930.

GUNN, PENWELL & LINDLEY and GEORGE R. FAUST, for appellant.

ACTON, ACTON & SNYDER, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

Appellant brought suit against appellee upon a lease for rent and claimed to recover the sum of $548. Appellee denied the claim and pleaded a set-off in the sum of $350. The lease covered a store building in the City of Danville and contained a great many provisions. The term extended from April 1, 1926, to April 29, 1934. The lease was first executed between appellant and one Ransom Lewis. By the written agreement of the parties the interest of Ransom Lewis in the lease was assigned to Claude A. Johnson and in the same manner was assigned by Claude A. Johnson, on August 1, 1927, to appellee, under seal, and appellee assumed and agreed to perform all of the covenants and provisions of the lease. Appellee paid the rent for a period, but made default in the payment of the rent from January 1st to May 1st, 1928.

It was provided in said lease as to fire:

"The tenant agrees that in case the premises hereby leased shall be damaged by fire at any time during said term, the tenant shall give immediate notice thereof to the landlord, who shall thereupon cause the same to be repaired, and a proportionate reduction of rent shall be allowed the tenant for the time occupied in repairing such part or parts of said premises as may be rendered untenantable and incapable of use and occupancy."

The lease further provided: "Any entry or re-entry by the landlord, whether had or taken under what are known generally as summary proceedings, or otherwise, shall not be deemed to absolve or discharge tenant from liability hereunder.

"In consideration of the foregoing covenants and agreements, and the sum of One Dollar by the landlord in hand paid, the receipt whereof is hereby acknowledged, the tenant does hereby agree to and

does deposit with and pay over to the landlord the sum of Three Hundred and Fifty ($350.00) Dollars, to be held by the landlord for the punctual payment of the rent and performance of the covenants and agreements in the within lease set forth to be paid and performed by the tenant. In the event that the tenant shall faithfully and fully pay the said rent and keep and perform each and every of the covenants, agreements and provisions in the said lease to be kept and performed by the tenant up to the end of and during the full term and period of this lease, then the landlord shall use and apply the said sum so deposited, for the rent hereinbefore provided to be paid by the said tenant for the last two months' rent so far as the same will apply. In the meantime the tenant shall be credited with and be entitled to interest on the said sum so deposited at and after the rate of two per cent per annum payable at the end of each calendar year.

"In the event, however, that the tenant shall be dispossessed from, or shall vacate or abandon the premises, or shall fail, neglect or omit at any time during the said term to perform and fulfill each and every of the covenants, agreements and conditions in the within lease set forth to be kept, performed and fulfilled by the tenant, including among others the agreements hereinbefore provided to be kept and performed by the tenant after dispossession, eviction, and/or abandonment, or other termination, that then the landlord may, at the landlord's option at any time or times use and apply the said sum so far as it will apply towards the payment of the rents reserved and any other sums by the tenant agreed to be paid and to the performance of the covenants and agreements therein contained to be kept, performed or fulfilled by the tenant, including any loss and/or deficiency which the tenant has agreed to pay up to the end of the term

for which said lease was originally entered into; and it is agreed that no action nor proceedings of any kind may nor shall be instituted, begun or carried on by the tenant in relation to said moneys so deposited or any part thereof until six months after the expiration of the full term of this lease as originally made. The tenant shall remain liable for any loss, deficiency or amount that said sum shall be insufficient to pay hereunder and if there be any surplus after making and applying the payments herein provided for, such surplus, if any, shall six months after the expiration by limitation of the original full term hereof and any renewals thereof herein provided for, be turned over by the landlord to the tenant. In the event that it shall become necessary upon such default to execute, acknowledge or deliver any instrument in writing, under seal or otherwise for the purpose of carrying out any of the provisions of this lease and this instrument by the tenant, the landlord is hereby made and constituted the attorney in fact irrevocably and coupled with an interest of the tenant, with full power and authority to sign, seal, execute and acknowledge and deliver any and every such instrument; and nothing herein contained shall be deemed to postpone nor preclude nor modify any and all rights and remedies which the landlord has or may have under said lease. The landlord may if it so elects, exhaust all or any of its rights and remedies against the tenant, before resorting to said deposit, but nothing herein contained shall require or be deemed to require the landlord so to do.''

There were other provisions of the lease to which it is not necessary to refer. Appellant's declaration is based upon a special count covering the lease and the common counts.

Appellee filed four pleas. The first plea was the general issue. The second plea was a plea of set-off

for the sum of $350, which appellee claimed. The third plea charged a destruction of the premises by fire on January 18, 1928, and the fourth plea averred the surrender of the premises and the acceptance of the same by appellant.

There was a trial by jury and a verdict and judgment for appellee in the amount of the set-off and interest upon the same, and appellant has brought the record to this court, by appeal, for review.

There is substantially no dispute as to the facts in this case, which are as follows: On July 2, 1927, Ransom Lewis assigned this lease to C. A. Johnson. On August 1, 1927, the said Johnson requested permission from the appellant to assign said lease to J. F. Friend, appellee. Appellee assumed the lease on the following terms: "I assume the lease above referred to and agree to perform and be bound by all the terms, covenants and conditions thereof, with the same force and effect as though originally the lessee thereunder. Date August 1, 1927, J. F. Friend (L. S.)," and the appellant consented to said assignment upon the conditions of said assumption.

Appellee thereupon entered into a heating contract with appellant, whereby he agreed to pay appellant the sum of $10 per month for each month between October 1st and April 30th in each year for heat to be furnished by appellant for said premises.

Thereafter, an August 24, 1927, an amendment to said lease was entered into between the appellant and appellee under the terms of which the rental on said premises was reduced from the amount provided in the original lease, namely, $1,800 per annum for the period beginning April 1, 1926, and expiring March 31, 1931, and the sum of $2,100 per annum for the balance of the term, to the sum of $1,500 per annum from August 1, 1927, to April 29, 1934. In said agreement, the said

appellee further agreed to pay the sum of $2 per month for water.

Appellee took possession of said premises on August 1, 1927, and paid the rental provided in the lease and amendments thereto until December 31, 1927, but did not pay rental for the months of January, February, March and April, 1928.

Appellee operated a barber shop in said premises and had working for him Edward Sheets. Appellee abandoned the premises and moved his property out in November, 1927. Appellee claimed that he assigned his lease to Edward Sheets under date of November 3, 1927. Under the terms of such assignment, however, the said appellee was not released or discharged from any liability whatsoever under the said lease. Sheets never paid any rent for the premises, never paid any water rent or any heat rent. Appellee paid some rent on the premises after he turned it over to Sheets. He did it because the plaintiff sued him and made him pay it.

After appellee assigned the lease to Sheets, the property in the barber shop still belonged to appellee and it was moved out either by appellee or by Sheets in November, 1927. After moving out all the fixtures, either appellee or Sheets took the key to the premises in the local store of the appellant company, left the key on the counter and said, "Here is the key." The clerk in the store testified that he said, "I won't accept it." Sheets testified that he turned the key to the room over to the manager of the cigar store and said, "Here is the key. The man has moved out. I can't run it that way," and that the manager of the store said nothing, but took the key.

Thereafter, some time in January, 1928, there was a fire in another part of the same building in the basement under a restaurant, operated by Peponis Brothers. The premises involved in this litigation were va-

cant at that time and were not damaged by the fire. The local manager of the cigar store testified that after the fire, he put some merchandise that had been damaged by the fire in there and left it there for not over three or four days, after which it was packed up and shipped to Chicago. The owner of the restaurant placed some chairs in this vacant room for a short time after the fire. Appellee testified that the goods of the Cigar Store were in this vacant room for two or three months.

After the premises had been abandoned by Friend, it appears that in one of the windows of the premises there was placed a sign reading: "For Rent. Inquire United Cigar Stores next door." This testimony was admitted over objection of the plaintiff. The lease specifically provided that lessee would allow notice "For Sale" or "To Let" to be put up and remain on the premises.

The premises were vacant and unoccupied, except as above stated, until May 1, 1928. At that time, the premises were leased to the Vermilion County Abstract Company for a term beginning May 1, 1928, and ending April 30, 1934, at an annual rental of $1,200. Under a rider attached to the lease no rental was due or payable thereunder for the period beginning May 1, 1928, and ending October 25, 1928, which period of time the lessee was to have rent free for the purpose of making alterations.

By the terms of the assignment from appellee to Sheets, appellee had assigned to Sheets his interest in the deposit made under the lease for security. On discovering this, Sheets, during the course of the trial, made an assignment back to Friend for that $350 deposit. Plaintiff offered to show that Sheets received no consideration whatsoever for signing said assignment, but the court refused such evidence.

The main question in the case is, whether the lease means what it reads and states, or whether it means nothing.

It has been held in numerous cases that a provision in a lease giving the lessor the right to re-enter, after lessee's default, without forfeiting the lease, is valid. (*Central Investment Co. v. Melick*, 267 Ill. 564; *Grommes v. St. Paul Trust Co.*, 147 Ill. 634; *Hicks v. Simons*, 207 Ill. App. 83.) It has also been held that the delivery of the keys of abandoned premises to the landlord and their retention by him is not an acceptance of an attempted surrender. (*West Side Auction House Co. v. Connecticut Mut. Life Ins. Co.*, 186 Ill. 156; *Hirsch v. Home Appliances, Inc.*, 242 Ill. App. 418 (Certiorari denied 246 Ill. App. xxvii); *Scanlan v. Hoerth*, 151 Ill. App. 582; *Bradley v. Walker*, 93 Ill. App. 609; *Robinson v. Henaghan*, 92 Ill. App. 620; *Gaines v. McAdam*, 79 Ill. App. 201.) Neither does the fact that the landlord puts up signs "To Rent" on the premises, after an abondonment, show an acceptance of such attempted surrender. (*West Side Auction House Co. v. Connecticut Mut. Life Ins. Co.*, 186 Ill. 156; *Hirsch v. Home Appliances, Inc., supra; Bradley v. Walker*, 93 Ill. App. 609.)

In *Grommes v. St. Paul Trust Co., supra*, the court held:

"There is nothing illegal or improper in an agreement that the obligations of the tenant to pay all rent to the end of the term shall remain, notwithstanding there has been a re-entry for default; and if the parties choose to make such an agreement we see no reason why it should not be held to be valid as against both the tenant and his sureties. . . . It may not be strictly accurate or correct to call the money to be paid, after re-entry, rent, or to treat the lease as in force, after a re-entry, but the parties have a right to fix the amount of rent to accrue according to the

terms of the lease, as the amount of damages to be paid by the tenant in case of a breach of his covenants. It can make but little practical difference whether the sum agreed to be paid be called rent or damages. It may be regarded as damages for the purposes of this suit.''

It has alway been the law that when a tenant abandons leased premises, without fault of the landlord, the landlord may re-enter and re-rent the premises, crediting the former tenant with the proceeds, and the landlord so taking possession does not relieve the tenant from liability for the stipulated rent. (*West Side Auction Co. v. Connecticut Mut. Life Ins. Co., supra; Marshall v. Grosse Clothing Co.,* 184 Ill. 421; *Humiston, Keeling & Co. v. Wheeler,* 175 Ill. 514; *Grommes v. St. Paul Trust Co., supra; Hirsch v. Home Appliances, Inc., supra; Harmon v. Callahan,* 214 Ill. App. 104; *Hicks v. Simons, supra; Scanlan v. Hoerth, supra; Spikings v. Fox,* 145 Ill. App. 337; *Rau v. Baker,* 118 Ill. App. 150; *Bradley v. Walker, supra; Gaines v. McAdam,* 79 Ill. App. 201.)

In *Humiston, Keeling & Co. v. Wheeler, supra,* the court held:

''In order to constitute an eviction, the tenant must abandon the premises on account of the act of the landlord, and if defendant had already abandoned them, the entry by plaintiff would not constitute an eviction. In cases showing abandonment without fault of the landlord, or as a result of his acts, he may re-enter and again rent premises and credit the lessee with the proceeds, and his so taking possession does not relieve from the payment of rent.''

It has also been held that a landlord has the right to hold a deposit until after the end of the original term (and even until six months after the end of the original term in this case) where an agreement to that effect is in the lease, and the landlord may apply the

deposit to the liquidation of any deficiency of rent which the landlord may suffer during the entire period until the end of the original term, and the tenant has no claim to the deposit and no right to recover any part of the deposit until after the expiration of the original term (and even not until six months after the end of the original term as in this case.)

No proofs were offered tending to support any of appellee's pleas. The clerk in the store, to whom the key was handed, had no authority to accept a surrender of the lease, and no such surrender was intended by either of the parties or contemplated by the terms of the lease. Neither was any plea of set-off possible, under the terms of the lease, and it was not shown by any competent testimony that fire in January, 1928, did any damage to the particular premises in question.

The instructions in this case were contradictory and numerous instructions were given for appellee for which there was no foundation in the proofs or law. Appellant's first given instruction stated the law of the case: ''You are instructed that under the terms of the lease which the defendant assumed the plaintiff herein had a right to enter or re-enter upon the premises described in said lease and repossess said premises without in any manner discharging the liability of the defendant for rent and specified in said lease.''

For the numerous errors pointed out, the judgment of the circuit court of Vermilion county is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*