**In the Matter of OAK WINDS, a Florida Limited Partnership, Debtor.**

**Bankruptcy No. 79–1617 C.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

May 28, 1980.

Order Denying Motion for Rehearing July 18, 1980.

Stephen Cole, Clearwater, Fla., for debtor.

Richard Malchon, St. Petersburg, Fla. and Albert I. Gordon, Tampa, Fla., for SE 1st Nat. Bank of Miami.

Charles Ketchey, Tampa, Fla., for Joe M. Rodgers & Assoc.

ORDER OVERRULING OBJECTION TO
DISMISSAL AND FINAL ORDER
OF DISMISSAL

ALEXANDER L. PASKAY, Chief Judge.

On November 21, 1979, the Southeast First National Bank of Miami filed an Involuntary Creditor's Petition against Oak Winds, a Florida Limited Partnership, seeking an Order for Relief under Chapter 11 of the Bankruptcy Code. Oak Winds filed an answer generally contesting the Involuntary Petition.

On February 21, 1980, the Southeast First National Bank of Miami hereinafter called "Bank", entered into a Stipulation with the Debtor wherein, among other things, the Debtor consented to the immediate entry of an Order for Relief pursuant to 11 U.S.C., § 303(h).

No Order for Relief was entered, as on March 4, 1980, the Bank and the Debtor filed a Joint Application to Dismiss the Petition With Prejudice. On March 10, 1980, and in compliance with § 303(j) of the Bankruptcy Code, this Court entered an Order Dismissing the Petition With Prejudice, which provided among other things:

"This Order of Dismissal shall become effective only after ten (10) days notice to Creditors of Oak Winds, the Debtor herein, unless a written objection thereto is filed within such ten day period by a creditor receiving such notice."

Joe M. Rodgers and Assoc., Inc., hereinafter called "Rodgers", filed an unsecured Proof of Claim and timely written objection to the dismissal. The Bank filed a Motion to Strike such objection alleging that Rodgers indeed is not a creditor of the Debtor. The parties agreed not to try the issue of whether Rodgers is a creditor of the Debtor pending a determination as to whether dismissal is in the best interest of the estate.

A hearing was duly held on May 3, 1980, on the issue of whether the dismissal was in the best interest of the estate, at which hearing Rodgers, the Bank and the Debtor presented evidence by way of live testimony and by way of an elaborate trial stipulation as to certain facts and documentation.

The facts relevant to the issues outlined above are basically without dispute and can be briefly summarized as follows:

Oak Winds is a Florida Limited Partnership and at the time pertinent to the controversy, was the owner and operator of a 456 unit apartment house complex constructed on property acquired by Oak Winds under a long-term ground lease. The complex is located in the city of Clearwater, Florida and has additional facilities such as swimming pools and tennis courts and, of course, built-in appliances customarily furnished by this type of apartment house complex. Oak Winds having defaulted on its mortgage obligation to Southeast First National Bank of Miami, the creditor who filed this involuntary proceeding under Chapter 11 of the Bankruptcy Code together with two other loan participants whose involvement is not relevant to this controversy, filed a complaint in the Circuit Court for Pinellas County, Florida and sought to foreclose the mortgage encumbering the leasehold interest of Oak Winds and also to enforce the security interest held by the Bank on chattels owned by and located in the apartment house complex. Shortly after the institution of the foreclosure proceeding, at the request of the Bank, the Circuit Court appointed Dwight McCormick to take over the project as a receiver, who took possession of the complex and assumed the operation of same.

The record further reveals that the apartment house complex was unfortunately constructed in a low-lying land area with no build-up and most importantly, as developed later, with a totally inadequate drainage system which was not even designed to handle the normal flow of water, let alone an abnormal flow caused by excessive precipitation.

On May 8, 1979, a torrential rainfall hit Pinellas County and, in a very short span of time, poured a tremendous amount of water on the complex. As the result there was an almost total inundation of the entire county and, of course, the entire apartment house complex flooded. The water rose over the parking lot, covered the swimming pools

and tennis courts and reached the level of approximately six feet in 146 units which, of course, rendered these units totally uninhabitable and they are still uninhabitable. In addition, as a direct result of the flooding the rentability of other directly unaffected apartments became significantly impaired to the extent they have not been rented since the flood and they still remain vacant.

The evidence reveals that it will be necessary to spend a minimum of $2,500,000 to construct an adequate drainage system and to refurbish and rehabilitate the damaged apartments. It was estimated that to accomplish this, it would take a minimum of four months and a maximum of six months.

In this connection it should be pointed out that at the time of the flooding, there were certain flood insurance policies in force covering the apartment house complex which policies also covered the chattels located therein. These policies specifically named the Bank as the mortgagee of the real and personal property and also named the Bank as the loss payee. The insurance proceeds paid totalled $708,315.77 and were endorsed by the Bank, named as a co-payee, over to the receiver who now holds the unused balance of these funds, in the amount of $600,000 in a form of interest bearing Certificates of Deposit. The difference between the amount received and the amount of the C.D. is attributable to the fee paid to the insurance adjustor and other incidental expenses incurred and paid by the receiver.

It is without dispute and the record is uncontradicted that as of April 25, 1980, there was a mortgage balance due to the Bank of $6,289,233 on the principal; $2,615,969.34 on the interest already accrued; and interest on the principal obligation which is accruing at the rate of $3,843.42 per day. There is hardly any doubt that the apartment house complex, as it now stands is practically unsaleable, but there is evidence in the record to show that upon completion of the reconstruction work outlined above, the complex would have a market value of $6,350,000. This estimate is based on the assumption, of course, that the rental rates will have to be reviewed and will have to be readjusted upward. There is no question that the sole asset of Oak Winds, i. e. this apartment house complex, is heavily over encumbered and that the partnership has no free assets which would be available for liquidation to the benefit of the unsecured creditors, either in a reorganization proceeding under Chapter 11 or in a liquidation case under Chapter 7 of the Code.

According to the stipulation, the sole creditor of Oak Winds is Rodgers who filed an objection to the dismissal. Rodgers was the general contractor in the apartment complex and was a party to the construction loan agreement and the mortgage note executed on March 22, 1974 between Oak Winds and the Bank, the lender for this construction project. It is important to point out in this connection that by virtue of a specific provision of the Construction Loan Agreement executed on March 22, 1974, Rodgers agreed to subordinate all his rights, liens and any other claims against Oak Winds to the rights of the Bank. There is now pending litigation concerning this project between Oak Winds and Rodgers which is presented in the form of a counterclaim to the suit filed by Rodgers against Oak Winds. Whatever rights Rodgers has against Oak Winds could, of course, be asserted in that particular law suit.

It is clear that Oak Winds has neither the desire nor the ability to reorganize, and that the only creditors of Oak Winds are the Bank, who consented to the dismissal, and Rodgers. The possibility of reorganizing this particular debtor is evidently nil and if any proceeding shall be had, it should be under Chapter 7 of the Code in a liquidating proceeding. While Rodgers concedes, as it must, that Oak Winds has no free assets, real or chattel; that Oak Winds has no equity in any of its assets; and, that it did indeed agree to subordinate its claim to the Bank. It insists, however, that the proceeds on the flood insurance policies are possible assets which could be utilized to revitalize and rehabilitate this debtor and, therefore, a dismissal would be improper.

This proposition urged by Rodgers is without any factual or legal support, either on the theory that Rodgers is entitled to the insurance proceeds because the Bank failed to perfect a security interest in the funds in conformity with the applicable provisions of the U.C.C. by filing a Financing Statement or on the ground that these funds belong, in any event to the general estate, i. e. to the unsecured creditors. These propositions have been resolved conclusively in *Paskow v. Calvert Fire Insurance Company*, 579 F.2d 949 (5th Cir. 1978), where it was held that the holder of a valid mortgage who holds a validly perfected security interest in personalty has a continued cognizable interest in the insurance proceeds and when the collateral which is insured is destroyed or damaged, the secured party is entitled to be paid out of the proceeds to the extent of its interest in the collateral especially when it was named as a loss payee or was named as a co-insured in the policy. The courts of this State reached the same conclusion. *Insurance Management Corp. v. Cable Services of Florida, Inc., et al*, 359 So.2d 572 (Fla.2d D.C.A. 1978).

In sum, it is evident and this Court is satisfied that there would not be any useful purpose to retain jurisdiction of this case either as a reorganization case under Chapter 11 of the Code since there is obviously no desire by the debtor to effectuate an involuntary reorganization nor would it serve any useful purpose to consider a conversion of this case into a liquidating case under Chapter 7 simply because there are no free assets which could be liquidated for the benefit of the general unsecured creditors or, the only one in this instance, Rodgers. Moreover, Rodgers' rights are not impaired by this conclusion at all. First because it cannot escape the legal consequence of its voluntary agreement to subordinate which agreements are uniformly recognized in a bankruptcy proceeding, *See Contractual Subordination and Bankruptcy, The Banking Law Journal*, Vol. 97, Number 3, March 1980 at page 204, but also since it is already asserting whatever claim it has against Oak Winds in now pending state court litigation and its position could in no way be enhanced by maintaining this proceeding in this Court under any chapter of the Code.

In light of the foregoing, this Court is satisfied that under these circumstances as outlined above, the objection to the dismissal of the proceeding by Rodgers is not well taken and should be overruled.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the objection to the dismissal of the proceeding filed by Joe M. Rodgers and Associates, Inc. be, and the same hereby is, overruled. It is further

ORDERED, ADJUDGED AND DECREED that the involuntary proceeding under Chapter 11 of the Code initially filed by the Southeast First National Bank of Miami be, and the same hereby is, granted and the above-captioned involuntary proceeding filed against Oak Winds, a Florida Limited Partnership be, and the same hereby is, dismissed.

## ORDER DENYING MOTION FOR REHEARING

THIS CAUSE came on for hearing on a *Motion for Rehearing* filed by Joe M. Rodgers & Associates, Inc. (Rodgers). The Motion is addressed to a previous order entered by this Court on May 28, 1980 which order overruled an objection to the dismissal of the above-captioned proceeding, which objection was also filed by Rodgers. The Motion does not allege that subsequent to the entry of the order of dismissal new facts have come to light which, first, would alter the result and which, second, could not have been discovered with due diligence prior to the entry of the Order. The Motion alleges, however, that the Order of May 28, 1980, i. e. the Order of Dismissal, contained manifest errors of law in that it relied on the case of *Paskow v. Calvert Fire Insurance Company*, 579 F.2d 949 (5th Cir. 1978) and also that it held that Rodgers subordinated its position to the rights of the Bank, a conclusion which is not supported by the record.

The Court heard the argument of counsel for the respective parties, considered the entire record again, including the Order under challenge, and is of the opinion that while it may be argued that the decision in the *Paskow, supra* case is not necessarily controlling, and may be distinguished from the facts involved in this controversy and that the narrow interpretation of the subordination agreement by Rodgers may not extend to certain monies held by the state court receiver, the Order of Dismissal was still proper for the following reasons:

First, the record is without any dispute that there is no equity in the one and only property owned by the Debtor, an apartment house complex; second, it is evident that there is no desire by the Debtor to obtain rehabilitation through Chapter 11 of the Bankruptcy Code; third, there is no viable business entity which could be rehabilitated under this Chapter since, as noted, the sole property is completely encumbered; and fourth, the Debtor has only one creditor, Rodgers, whose interest is adequately protected if the case stands dismissed since Rodgers will have the same rights which it could assert in a non-bankruptcy forum against the Debtor and there is no other interest which requires protection.

For the reasons stated, this Court is satisfied that the Motion for Rehearing is without merit.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Rehearing filed by Joe M. Rodgers & Associates, Inc. be, and the same hereby is, denied.