**In re Sol ARKER, Debtor.**

**Bankruptcy No. 880–0079B.**

United States Bankruptcy Court, E. D. New York.

Oct. 20, 1980.

Marvin R. Javitz, New York City, for debtor.

Stanley R. Stern, New York City, for Bank Leumi Trust Co., petitioner.

Stephen F. Harmon, Parker, Chapin, Flattau & Klimpl, New York City, for Bank Leumi, Trust Co.

C. ALBERT PARENTE, Bankruptcy Judge.

On February 14, 1980, the Bank Leumi Trust Company of New York (hereafter "petitioning creditor") filed an involuntary petition against Sol Arker (hereafter "alleged debtor") seeking an order for relief under Chapter 7 of the Bankruptcy Code. The alleged debtor filed an answer generally contesting the involuntary petition. The matter was set for trial to ascertain whether the alleged debtor, at the time the involuntary petition was filed, was generally not paying his debts as they became due.

A summary of the pertinent facts follows:

In 1974, the alleged debtor and his father were the sole principles, stockholders and officers of Donogan Hills Colony, Inc. (hereafter "Donogan Hills") and Sierra Properties, Inc. (hereafter "Sierra"). The alleged debtor and his father personally guaranteed all the present and future liabilities of Sierra, which in turn guaranteed the obligations of Donogan Hills.

On December 20, 1976, Donogan Hills executed a promissory note in favor of the petitioning creditor in the sum of $182,000.00 payable on February 28, 1977. Said note was in consideration of a loan made by the petitioning creditor to Donogan Hills.

The petitioning creditor commenced an action in the New York State Supreme Court in 1977 predicated on Donogan Hills' default under the promissory note and the guarantors' refusal to make payment. Judgment was entered on December 15, 1977, against Donogan Hills and the guarantors (Sierra, the alleged debtor, and the alleged debtor's father) in the sum of $190,860.06.

Subsequent to the entry of the state court judgment, the petitioning creditor commenced supplementary proceedings pursuant to Article 52 of the New York Civil Practice Laws & Rules (McKinney's 1978). At the supplementary examinations, the alleged debtor testified that (1) apart from the minimal sums of money received from his mother, the living expenses of the alleged debtor were paid for by his wife; (2) he owned no stocks, bonds, automobiles, houses or any other real property; (3) he had no funds held for him in other accounts, nor did he have any personal bank accounts other than an escrow account; and (4) he had no receivables, nor was he owed any monies.

At the trial held in this Court on April 24, 1980, the alleged debtor reiterated that he was not in possession of any assets which could be used to satisfy the petitioning creditor's judgment. Further, the alleged debtor testified that in addition to the petitioning creditor's judgment, he has incurred a small number of current debts which arose out of household and daily living expenses. The alleged debtor stated that these recurring debts were paid in part from monies he would receive from his mother and his wife. The remaining debts were paid by the alleged debtor by checks drawn from his brother's checking account. Finally, the alleged debtor testified that his sole source of income is from his legal practice, which generates approximately $100.00 to $500.00 per year.

Elliot Robinson, Vice–President of the Credit Administration Division for the Bank Leumi, testified that subsequent to the entry of the state court judgment, the petitioning creditor attempted to execute

on said judgment, but that the Sheriff of the City of New York returned the writ of execution unsatisfied due to his inability to locate any of the alleged debtor's assets. Robinson further testified that the petitioning creditor again attempted to execute on said judgment, but that the Sheriff of the City of New York returned the writ of execution unsatisfied due to his inability to locate any of the alleged debtor's assets. Robinson further testified that the petitioning creditor again attempted to execute on said judgment and that this time the Sheriff was able to execute on two bank accounts in the sum of $6,499.40. Thus, the petitioning creditor's judgment was reduced to $184,360.66.

Petitioning creditor contends that given the circumstances of this case, i. e., the alleged debtor has only one large creditor who is not being paid, the Court is warranted in finding that the alleged debtor is generally not paying its debts as they become due and thus an order for relief should be granted.

In contraposition, the alleged debtor contends that the petitioning creditor is not a holder of a claim against him. Further, the alleged debtor denies that he is generally not paying his debts as they become due.

Whether the Court should grant an order for relief against the alleged debtor rests on the resolution of the following issues:

(1) Is the petitioning creditor a holder of a claim in the sum of $5,000.00 which is not contingent as to liability.

(2) Should the Court grant an order for relief where the petitioning creditor contends that the alleged debtor has failed to pay one creditor and where the alleged debtor has no assets for the Bankruptcy Court to administer.

## I.

As set forth in 11 U.S.C. § 303 and as is relevant to the case now before the Court, an involuntary case may be commenced under Chapter 7 or Chapter 11 of the Bankruptcy Code against any person that may be a debtor under those chapters. 11 U.S.C.

§ 303(a); *In re All Media Properties & Artlite*, 5 B.R. 126, 2 C.B.C.2d 449 (Bkrtcy.S. D.Tex.1980). In cases such as the case at bar, where the debtor has fewer than twelve creditors, § 303(b)(2) provides that a petition may be brought by a single entity which is a holder of a claim against the alleged debtor that is not contingent as to liability. 11 U.S.C. § 303(b)(2); 2 Collier on Bankruptcy (15th Ed.) ¶ 303.05(2).

Section 101(4)(A) defines a claim to mean:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured; or . . .

Section 303(b)(2) restricts the definition of a claim under § 101(4)(A) for purposes of an involuntary petition only to the extent that a claim under § 303(b)(2) must be unsecured and must not be contingent as to liability. 11 U.S.C. § 303(b)(2).

The alleged debtor contends that the petitioning creditor's claim is contingent as to liability since the alleged debtor has filed an appeal from the state court judgment entered on December 15, 1977.

The petitioning creditor alleges that at no time prior to the filing of the involuntary petition did the alleged debtor or anyone on his behalf ever attempt to appeal from the state court judgment.

The testimony elicited at trial does not support the alleged debtor's contention that an appeal from the state court judgment has in fact been filed. No documentary evidence was submitted by the alleged debtor to support his contention. Further, although the attorney for the alleged debtor stated at trial that an appeal had been filed, the alleged debtor testified that he did not move to vacate the judgment in 1977 nor did he recall whether he had instructed his attorney to move to vacate the judgment after he had received notice of the execution by the New York City Sheriff's Office in 1978, or whether in fact an appeal had been filed.

■ Assuming that the alleged debtor had in fact filed an appeal from the state court judgment, nevertheless the petitioning creditor's claim would not be contingent as to liability. It is a well established principle of law in New York that the finality of a judgment is not affected by the pendency of an appeal. *In re Bailey*, 265 App. Div. 758, 40 N.Y.S.2d 746 (1943), aff'd 291 N.Y. 534, 50 N.E.2d 653 (1943). Absent a stay, execution on the judgment may proceed while the appeal is pending. *In re Bailey*, supra.

The Court finds that no stay of execution was issued by the state court. This finding is supported by the following facts:

First: No evidence was adduced at trial showing that the state court had issued a stay against execution on the judgment.

Second: The petitioning creditor not only conducted supplementary proceedings subsequent to the entry of the state court judgment but also attempted to execute on said judgment.

Thus, the decision of the state court is final as to all matters of law and fact that were or should have been adjudicated in the state court proceeding. *Carr v. U. S.*, 507 F.2d 191 (5th Cir. 1975), cert. denied 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975).

■ Finally, the Court finds that the alleged debtor's introduction of evidence to demonstrate that he is not in fact liable to the petitioning creditor is nothing more than an attempt to collaterally attack the state court judgment in this Court. It is well established that where a claim of a creditor is predicated on a state court judgment, the claim may be assailed as invalid in the Bankruptcy Court upon the grounds following:

(a) lack of jurisdiction over the parties or the subject matter of the suit; or

(b) the judgment is a product of fraud. *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

No claim has been put before this Court that either a jurisdictional defect or fraud of a party elicited the decision of the state court. Thus, the alleged debtor cannot collaterally attack the judgment in this Court, but rather must move in the state court.

■ It is this Court's finding that the state court judgment is a claim pursuant to the definitional context of 11 U.S.C. § 101(4)(A), as it constitutes a "right to payment" in the sum of $190,860.06. Therefore, the petitioning creditor's claim meets the criteria for the commencement of an involuntary petition in comport with 11 U.S.C. § 303(b)(2).

## II.

Subsection (h) of § 303 enunciates the standard for an order for relief on an involuntary petition. 11 U.S.C. § 303(h); H.R. Report No. 95–595, 95th Congr., 1st Session, at pp. 323–324 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5820.

Section 303(h) provides in relevant part:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter which the petition was filed, only if—

(1) The debtor is generally not paying such debtor's debts as such debts become due; or . . .

The phrase "the debtor is generally not paying such debtor's debts as such debts become due" is not defined in the Bankruptcy Code. *In re All Media Properties & Artlite*, supra. Resort to the legislative history for insight as to the meaning of subdivision (1) of § 303(h) is unproductive due to the absence of a conference committee resolution of the differences between the House version ("generally unable to pay") and the Senate version ("generally unable to pay or has failed to pay a major portion thereof") of the legislation which emerged as the Bankruptcy Code. *In re Hill*, 5 B.R. 79, 2 C.B.C.2d 646 (Bkrtcy.D.Minn.1980); *In re All Media Properties & Artlite*, supra.

However, when faced with this issue, the bankruptcy courts have consistently held that in order to determine whether the alleged debtor is generally paying his debts as they become due, the amount of the debts not being paid and the number of creditors not being paid are significant factors. *In re All Media Properties & Artlite*, supra; *In re Kreidler Import Corp.*, 4 B.R. 256, 2 C.B.C.2d 159 (Bkrtcy.D.Md.1980); *Report of the Commission on the Bankruptcy Laws of the United States*, H.R.Doc.No.93–137, 93rd Congr. 1st Session, Part I at p. 188 (1973). Specifically, in the *Matter of 7H Land & Cattle Co.*, 6 B.R. 29, 2 C.B.C.2d 554 (Bkrtcy.D.Nev.1980), the bankruptcy court was faced with the following issue:

Does an allegation that the alleged debtors have failed to pay one creditor constitute "generally not paying such debtors' debts as they become due."

Relying on the experience of France and Canada, each of which has had for years similar provisions in their bankruptcy legislation, see: Honsberger, "Failure to Pay One's Debts Generally As They Become Due: The Experience of France and Canada", 54 Amer.Bk.Law J. 153 (Spring 1980), the Court stated that as a general rule:

It may be assumed that in the ordinary case there can be no order for relief with no more proof than mere failure to meet liability to a single creditor.

*In re 7H Land & Cattle Co.*, supra, 6 B.R. at p. 31. 2 C.B.C. 646, at p. 557.

However, the Court further states that similar to the experience in Canada, there should be two exceptions to this general rule:

First: An order for relief should be granted in the exceptional case of an alleged debtor with a sole creditor who would otherwise be without an adequate remedy under nonbankruptcy law.

Second: If the petitioning creditor makes a showing of special circumstances amounting to fraud, trick, artifice or scam, then an order for relief should be granted. *In re 7H Land & Cattle Co.*, supra; Honsberger, "Failure to Pay One's Debts Generally As They Become Due: The Experience of France and Canada", supra; *In re Holmes and Sinclair*, 20 C.B.R. (N.S.) 111 (Ont.1975).

This Court agrees with the principle of law enunciated in the *Matter of 7H Land and Cattle Co.*, supra. Thus, given the facts of the case at bar, unless one of the exceptions to the general rule stated in said case applies, the petitioning creditor's request for an order for relief should be denied.

The petitioning creditor did not put before this Court a claim that there were circumstances surrounding the petitioning creditor which bear closely upon trick, artifice, scam or fraud by the alleged debtor. Therefore, the second exception to the general rule does not apply to the case at bar.

With respect to the first exception, i. e., an alleged debtor with a sole creditor who would otherwise be without an adequate remedy under non–bankruptcy law, although there is ample evidence in the record to support the Court's finding that the petitioning creditor has exhausted all possible non–bankruptcy remedies, there is an additional factor in this case which was not present either in the *Matter of 7H Land & Cattle Co.*, supra, nor in any of the Canadian cases brought to the attention of this Court.

The Court in the case at bar is faced with the following situation: an involuntary petition has been filed against an alleged debtor who has no free assets which could be liquidated for the benefit of his creditors and who has only one creditor which has yet to be paid. It is manifest that the alleged debtor has no free assets to be liquidated which is decisive to this Court's conclusion that an order for relief should not be granted in the case at bar. This conclusion is predicated on the purpose of an involuntary proceeding which is to secure an equitable distribution of the assets of the alleged debtor among all his creditors. *In re Blount*, 142 F. 263 (E.D. Ark.1906); *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171 (1901); *Report of the Commission on the Bankruptcy Laws of the United States*, su-

pra at p. 190. To grant an order for relief in a case where there are no assets to be liquidated for the benefit of creditors would not be in comport with this long standing policy underlying involuntary proceedings.

Further support for this precept is found in the *Matter of Oak Winds*, 4 B.R. 528, 2 C.B.C.2d 417 (Bkrtcy.M.D.Fla.1980). In that case, an involuntary petition under Chapter 11 of the Bankruptcy Code was filed against the alleged debtor. The petitioning creditor entered into a stipulation with the alleged debtor wherein, among other things, the alleged debtor consented to the granting of an order for relief. An order for relief was never entered by the court due to the filing of a joint application to dismiss the involuntary petition by the alleged debtor and the petitioning creditor. An objection to said application was filed by a creditor of the alleged debtor. In overruling the objection, the court stated in relevant part:

> In sum, it is evident and this Court is satisfied that there would not be any useful purpose to retain jurisdiction of this case either as a reorganization case under Chapter 11 of the Code since there is obviously no desire by the debtor to effectuate any involuntary reorganization *nor would it serve any useful purpose to consider a conversion of this case into a liquidating case under Chapter 7 simply because there are no free assets which could be liquidated for the benefit of the general unsecured creditors or, the only one in this instance, Rodgers.* (Emphasis added)

*In re Oak Winds*, supra, 4 B.R. 528, 2 C.B. C.2d at p. 421.

Just as the court in the *Matter of Oak Winds*, supra, refused to convert the involuntary Chapter 11 case to a Chapter 7 case on the ground that there were no free assets to liquidate, this Court is constrained to deny the granting of an order for relief in the case at bar. To grant an order for relief in the case at bar would serve no purpose since there are no assets for this Court to administer.

In light of the foregoing principles of law, this Court concludes that the circumstances of this case mandate the denial of the petitioning creditor's application.

Settle judgment.