**In re NORTH COUNTY CHRYSLER PLYMOUTH, INC., Debtor.**

**Bankruptcy No. 81–00597–2.**

United States Bankruptcy Court,
W. D. Missouri.

Aug. 24, 1981.

Howard D. Lay, Kansas City, Mo., for petitioning creditors.

Thomas E. Thompson, Kansas City, Mo., for debtor.

## MEMORANDUM OPINION

JOEL PELOFSKY, Bankruptcy Judge.

On February 25, 1981, Chrysler Credit Corporation, hereinafter Chrysler Credit, filed an involuntary petition in bankruptcy for North County Chrysler-Plymouth, Inc., a Missouri corporation, hereinafter North County. Chrysler Credit alleged that North County had less than 12 creditors and that it was "generally not paying its debts as they become due", alleging that North County owed Chrysler Credit $167,503.54 in floor plan financing for which North County had issued checks which were not paid by its bank.

A few days prior to the filing, North County advertised a public auction of its office and shop equipment at its premises. On February 27, 1981, Chrysler Credit applied to this Court for an order directing an accounting and the paying over of the proceeds of the auction to the Court, alleging that the sale would otherwise result in the diminution of the assets of the alleged debtor. The parties appeared by counsel to argue the application and it was sustained. The Court's order provided:

"That North County Chrysler-Plymouth, Inc. and all those for it or on its behalf, are directed to account for and pay all proceeds of the sale of automobile parts, fixtures, and other assets of the dealership out of the ordinary course of business to the Clerk of the United States Bankruptcy Court for the Western District of Missouri."

At about the same time that this involuntary proceeding was begun, Chrysler Credit filed a replevin action against North County in the United States District Court for this judicial district. No. 81–0086–CV–W–1. The new cars held by North County were taken by Chrysler Credit. In the civil suit, North County filed a counterclaim.

A hearing was held on the involuntary petition on March 25, 1981. At that hearing, with leave of court, North County filed its answer out of time. In the answer, North County denied that Chrysler Credit had a non-contingent claim, denied that the value of the property replevined was less than the amount of Chrysler's claim and alleged that North County had more than 12 creditors, thus making the petition defective. After March 25th, three additional evidentiary hearings were held. The parties appeared by counsel on each occasion and evidence was heard. The matter was taken under advisement pending the filing of briefs which have now been received.

## I.

Section 303 of the Code, Title 11, U.S.C., permits the filing of an involuntary petition under Chapter 7 "against a person ... that may be a debtor under the chapter under which such case is commenced." Under Section 103(30) of the Code, a person is defined to include a corporation. Chrysler Credit pleads for relief under Chapter 7 of the Code. The involuntary case "is commenced by the filing ... of a petition ...

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability ... if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims ..."

Section 303(b)(2) permits one creditor to file "if there are fewer than 12 such holders ...". Relief may be ordered on a controverted petition "after trial ... if (1) the debtor is generally not paying such debtor's debts as such debts become due ...".

The Code has abandoned the requirement that the creditors prove an act of bankruptcy before relief can be ordered in an involuntary proceeding providing instead that "... the court shall order relief after a trial in an involuntary case ... only if the debtor is generally not paying" his debts as they become due.

"Although the precise scope and meaning assigned to the term of 'generally not paying' are left to the courts, it is clear that a court must find more than a prospective inability by the debtor to pay only a few of his debts, and more than a past failure to pay a few of such liabilities." 2 Collier on Bankruptcy, ¶ 303.11 (15th Ed.).

The petitioning creditors have the burden of proof on the issues presented by the filing and North County's answer. *In re Perry*, 336 F.Supp. 420 (DC S.C.1972); *In re J.V. Knitting Services, Inc.*, 4 B.R. 597 (Bkrtcy.S.D.Fla.1980).

## II.

The initial question is whether the involuntary petition is adequate. In its answer, North County alleged that it had twelve or more creditors but failed to comply with the requirements of Rule 104(e), Rules of Bankruptcy Procedure, by not listing the creditors and the amount of their claims. An amended answer was filed on April 1, 1981, with a list of 98 creditors, attached as an exhibit. On April 6, 1981, Chrysler Credit filed an amended petition, adding four additional creditors, whose claims were supported by affidavits attached to the amended petition. North County filed an answer generally denying all of the allegations of the amended petition and incorporating all of the defenses raised in its earlier pleadings. Thus, the absence of sufficient peti-

tioning creditors in the original petition has been preserved for resolution at this time.

Five creditors joined in the amended petition. Four furnished affidavits as to the nature and amount of their respective debts. Three of the petitioning creditors were listed by North County in the attachment to its amended answer. Interestingly enough, Chrysler Credit was not listed as a creditor in the attachment. No affidavit or evidence was offered by the alleged debtor to controvert the affidavits of the petitioning creditors.

Except for Chrysler Credit, none of the petitioning creditors testified at the hearing. However, representatives of Southwestern Bell, the Gas Service Company, Kansas City Power & Light Company, James Auto Supply and Musicord, creditors acknowledged in debtor's answer, did testify that North County had not paid amounts due them. The testimony showed that Southwestern Bell and Kansas City Power & Light had letters of credit which would offset some but not all of the amounts due them. Two of those testifying creditors, James Auto Supply and Musicord, indicated that they wished to join as petitioning creditors.

A petitioning creditor must be an entity holding a claim that is not contingent. Section 303(b)(1). An entity is defined in Section 101(14) to include a person, which in turn is defined broadly in Section 101(3) so as to include all of the parties making claims in this case. Section 101(4) defines a claim to be a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured . . ." Obviously Section 303(b)(1) modifies this definition in an involuntary proceeding so that the claim may have all of the attributes of a Section 101(4)(A) claim except that it may not be contingent.

The history of the language of Section 303(b)(1) reflects a gradual easing of the requirements imposed upon the petitioning creditor. 3 Collier on Bankruptcy ¶ 59.14[1] and [2] (14th Ed.). Requirements that the

claim be provable and liquidated have been abandoned in the Code. House Report No. 95–595, 95th Cong. 1st Sess. (1977) (309) reprinted in 2 App. Collier on Bankruptcy (15th Ed.). The qualifications of a petitioning creditor were the subject of an extended analysis in *In re All Media Properties, Inc.*, 5 B.R. 126 (Bkrtcy.S.D.Texas 1980). There the Court concluded that "just because a claim is unliquidated, disputed or unmatured apparently does not mean it is contingent." 5 B.R. at 133. See also *In Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862 (9th Cir. 1976).

North County contends that a debt which is not reduced to judgment which is offset by a counterclaim, or otherwise "uncertain, tenuous and indefinite" is contingent, citing *In re Mullings Clothing Co.*, 238 F. 58 (2nd Cir. 1916) and *In re Arker*, 6 B.R. 632 (Bkrtcy.E.D.N.Y.1980). In *Mullings*, the Court defined a contingent liability as one where there was an uncertainty "at the time of the filing of the petition in bankruptcy, whether . . . the bankrupt will ever become liable to pay it." 238 F. at 67. *Arker* does not attempt even a general definition of what constitutes a contingent liability but holds, narrowly, that an appeal from a state court judgment, otherwise not stayed, does not affect its finality, i. e., it is not made automatically contingent.

▪ Here, creditors Booth Tow Service, James Auto Supply, Inc., Mike's North Oak Auto Parts, Musicord, and Pete's Tow Service have alleged, either by testimony or affidavit, that they have provided services to North County for which they have not been paid and its amended answer of April 14, 1981 schedules each of these entities as a creditor, even while denying, in its pleadings, that they hold non-contingent claims. But North County offered no evidence that the debts had been paid or that there was otherwise no liability. While the petitioning affidavits lack careful draftsmanship, not utilizing the language of the statute or prior decisions, those affidavits, taken with the listing of the debts by North County are sufficient to establish the claims of the petitioning creditors, at least as to the amount

North County admits it owes. The testimony of the two creditors, James Auto Supply, Inc. and Musicord, who appeared and asked to join as petitioners, is credible.

As to each creditor, North County asserts that the failure to allege or produce evidence to the effect that the claim is not contingent is fatal to the validity of the petitioner's status. The argument is not persuasive. By its schedules, North County has admitted the liability. "In an ordinary debt arising from, for example, a sale of merchandise, the parties to the transaction would not at that time view the obligation as contingent. Subsequent events might lead to a dispute ... but would not make [the debt] a contingent one." *In re All Media Properties, Inc.*, supra at 133. The Court finds that creditors Booth Tow Service, James Auto Supply, Inc., Mike's North Oak Auto Parts, Musicord, and Pete's Tow Service have non-contingent claims which qualify them to be petitioning creditors. However, the amount of the claims admitted by North County as to these creditors does not aggregate $5,000 and the petition therefore, unless the claim of Chrysler Credit is included, is not sufficient.

## III.

To put the Chrysler Credit claim in perspective requires a recitation of some facts. North County became a Chrysler dealership in August of 1980. It would obtain automobiles from Chrysler Corporation, the manufacturer, and Chrysler Credit would pay for these cars, taking a floor plan security interest. When North County sold a car to an individual, Chrysler Credit would release the floor plan security interest and be paid off by the buyer or finance the purchase. Apparently business was fairly good until January of 1981.

On January 23, 1981, North County sold 23 used cars to CET Enterprises on a wholesale basis. Cash was paid and deposited primarily in Mel Khan's personal account. Khan was president of North County at the times set out here. No party held a security interest in the used cars. On the same day, Pete Franklin, who owned a Chrysler dealership himself, and had a minority interest in North County, wrote a check on the corporate account for $293,611.74. The check was given to First National Bank of Gladstone and completely paid a loan guaranteed by the SBA, which had been made to North County by First National.

As a result of the payment of the loan, North County's bank account was depleted and First National returned to Chrysler Credit $167,503.54 in checks drawn against the account. On January 28, 1981, there was a meeting between representatives of Chrysler Credit and Khan, at his attorney's office. Khan signed a letter acknowledging the non-payment of the checks and agreeing to the presence of a Chrysler Credit representative at the agency to "collect the proceeds from the sale of each floor planned vehicle by Chrysler Credit immediately upon consummation of the sale ...".

Chrysler Credit replevined all the vehicles subject to its security interest on January 30, 1981, as part of an action it filed in the United States District Court for the Western District of Missouri, styled *Chrysler Credit Corporation v. North County Chrysler-Plymouth, Inc., et al.,* No. 81–0086CV–W–1–3. On January 31, 1981, North County paid to Jonas Reichenbach, a relative of Khan's, $53,500.00, apparently in payment of a debt previously incurred. In early February Khan wrote two checks to cash, totaling $14,700.00.

On February 22, 1981, North County advertised an auction of office and shop equipment, stating "we have closed our car dealership." Chrysler Credit filed the involuntary petition in bankruptcy on February 25, 1981 and obtained an order directing payment of the proceeds of the auction into this Court after a hearing attended by counsel for Chrysler Credit and for North County. An answer to the involuntary petition was filed, out of time, on March 25, 1981. The report of the auction was filed on April 1, 1981, showing rejected bids of $14,749.00 and net proceeds of $2,216.61, diminished further by a check not paid by a purchaser.

North County filed an answer and counterclaim against Chrysler Credit in the civil action on March 17, 1981. In the answer, North County alleges issues of novation, release, failure of consideration, fraud, failure to state a claim and lack of due process. In the three count counterclaim, North County alleges wrongful replevin, willfully and maliciously performed, conspiracies to put North County out of business and to refuse to perform under contract obligations. North County asked for actual damages in excess of a million dollars and punitive damages of $5,000,000.00 as to Count I and damages in the sum of $500,000 actual and $5,000,000 punitive in each of Counts II and III. The sums prayed for exceed the amount of Chrysler Credit's claim.

North County argues that Chrysler Credit's claim is contingent because it is more than offset by the counterclaim and is therefore a debt that may never have to be paid. Matters of defense and counterclaim intending to defeat the creditor's status as a petitioner may be raised in the answer to the involuntary petition. *Harris v. Capehart.—Farnsworth Corporation*, 225 F.2d 268 (8th Cir. 1955); 3 Collier on Bankruptcy, ¶ 59.14[5] (14th Ed.). Where, as here, defenses and counterclaims have been raised, the question becomes one of whether, at this stage of the proceeding, those defenses and counterclaims can be defined so as to defeat the claim.

At the outset, it must be recognized that all of the defenses and counterclaims require the hearing of evidence for their proof. None are conclusive as a matter of law. In order to evaluate the defenses and counterclaims, therefore, the Court must indulge in a certain amount of speculation as to the validity of the pleadings. While the evidence introduced at the trial of the involuntary petition shows that there is little dispute as to the sequence of events, little evidence was introduced to shed light upon the motivations of the parties, to explain the events or to prove damages.

In a case where the need arose to evaluate an anti-trust claim as an asset of the estate, the Court concluded that the cause of action was not an asset upon which the debtor could rely to stave off bankruptcy.

"The key to determining whether or not an antitrust claim can be included as property available for the payment of debts is the phrase 'fair evaluation' . . . it is clear that an alleged bankrupt may not avoid adjudication simply by claiming that it has a cause of action against another for an amount sufficient to pay its debts or by starting an action for an amount sufficient to pay its debts. On the other hand, an alleged bankrupt with a cause of action which may be readily collectible should not be forced into involuntary bankruptcy simply because a judgment has not been obtained or collected.

The Court in applying the phrase 'fair evaluation' have to some extent solved this and similar problems by interpreting the phrase to mean 'a value that can be made promptly effective by the owner of property to pay his debts'" (citations omitted). *In re Bichel Optical Laboratories, Inc.*, 299 F.Supp. 545, 546 (D.C.Minn. 1969).

The Court in *Bichel* rejected the proposition that a claim in anti-trust was an asset of the estate because it could not be reduced to funds available to pay debts within a reasonable time. See also *In re Otto's Liquor, Inc.*, 321 F.Supp. 160 (D.C.Minn.1970) and *Matter of Hill*, 5 BR 79 (Bkrtcy.Minn. 1980). The decision in *In re Kreidler Import Corp.*, 4 BR 256 (Bkrtcy.Md.1980) that a counterclaim may offset a claim so as to disqualify a creditor is distinguishable. In *Kreidler* the parties stipulated that the facts underlying the breach were true. Here, there are no stipulations which would enable the Court to conclude with any degree of certainty that North County would prevail on any defense or counterclaim so as to offset completely the claim of Chrysler Credit.

"The Court has decided that where the issues concerning defenses to a claim of a petitioning creditor are not clear and require adjudication of either substantial factual or legal questions, the creditor

should be recognized as qualified to join in the bringing of an involuntary petition." *In re All Media Properties, Inc.,* supra, at 134–135.

In *Bichel,* the Court held that an antitrust claim was not a proper offset for a claim in contract. This Court need not reach that issue because another court has jurisdiction of the complaint and counterclaim. This situation imposes an additional restraint upon the Court's evaluation of the defenses and counterclaims because of the impact of this Court's pronouncements upon further proceedings.

"The purpose of an involuntary proceeding ... is to secure an equitable distribution of the assets of the alleged debtor among all his creditors." *In re Arker,* supra at 636. By eliminating the need to have a provable, liquidated claim, the Congress has stated a policy in favor of a liberal taking of jurisdiction in involuntary cases. Resolution of disputes concerning claims is left to a later time. Cf. *In re Royal G. Covey,* 650 F.2d 877, 7 BCD 1069 (7th Cir. 1981).

The Court, in *Covey, supra,* suggests that the Bankruptcy Court, in determining whether to resolve disputes concerning debts as a part of the adjudica-process, should balance the interest of the debtor in avoiding the involuntary bankruptcy against the creditor's interest in early resolution of their claims. Here, the dispute with Chrysler Credit will be extended. North County apparently has assets but has made no attempt to liquidate them to pay creditors other than Chrysler Credit. North County may have committed preferences. It is no longer in business. Its interest, therefore, in avoiding the involuntary bankruptcy are bottomed on the notion that, if left alone, it will pay its creditors. That consideration is not persuasive when balanced against the consideration that this Court, by ordering relief, will provide a single forum and certainty in the resolution of disputes and the distribution of North County's assets.

■ In light of all these considerations, the Court finds that Chrysler Credit's claim, based upon the failure of North County to pay $167,503.54 in checks which it issued to Chrysler Credit, is not contingent nor so clearly subject to a defense or counterclaim as to disqualify it as the basis for Chrysler Credit's filing as a petitioning creditor.

## IV.

■ North County contends that the involuntary petition is inadequate in that petitioning creditors named in the petition did not testify and creditors testifying cannot join. Nothing in the statute or rules requires that a petitioning creditor testify. It is sufficient that evidence is introduced from which the Court can conclude that the petitioning creditors' claim is non-contingent. The affidavits and North County's books of account enable the Court to make such a finding as to Booth Tow Service, Mike's North Oak Auto Parts and Pete's Tow Service. All are creditors holding non-contingent claims. *Grafton v. Lloyd,* 86 F.2d 205 (9th Cir. 1936).

■ Representatives of James Auto Supply and Musicord testified at one of the hearings prior to a ruling on adjudication. Each indicated a desire to join as petitioning creditors. North County's attempt to disqualify these two creditors ignores the plain language of Section 303(c) of the Code and Rule 104(e). Both provisions, in substantially similar language, permit a "creditor holding an unsecured claim that is not contingent" to join as if an original petitioner anytime before dismissal or relief is ordered. 3 Collier on Bankruptcy ¶ 59.28–59.32 (14th Ed.). *In re Inman,* 57 F.2d 595 (D.C.Wyo.1932).

■ While the applications to join as petitioning creditors are not artfully drawn, the sense of the creditor's intention is clear. The Court has no authority to deny intervention if the application to intervene is timely and the creditor otherwise qualifies. *In re Acord Ventilating Company,* 221 F.2d 899 (7th Cir. 1955).

"Intervention is a matter of right unless the bankruptcy court finds the petition was made in bad faith for the purpose of

improperly invoking its jurisdiction. Good faith is presumed and the burden of showing bad faith rests on the alleged bankrupt . . .

"Clearly the purpose of the statute and the rule [Section 59 of the Act, Section 95, Title 11, Rule 104] is to facilitate bankruptcy proceedings regardless of the correctness of the originating petition." *In re Crown Sportswear*, 575 F.2d 991, 993 (1st Cir. 1978)

■ As a general matter, it would be difficult for a creditor to know if a debtor such as an automobile agency had more than twelve creditors. Except for employees, utility companies and the entity funding the automobile purchases, the agency has little need to incur debt while doing business. North County suggests that Chrysler Credit was motivated by a desire to put it out of business. The only evidence of that is the seizure of the new automobiles only a few days after Chrysler Credit placed an employee on the premises to monitor sales. But the seizure could have just as easily been motivated by a reconsideration of the prospect of getting paid. North County has failed to persuade that the filing of the involuntary petition by Chrysler Credit alone was in bad faith.

The Court finds that there are more than three entities holding non-contingent claims which aggregate at least $5,000 over the value of any security who have joined as petitioning creditors or who have intervened in timely fashion. The petition is adequate therefore as to numbers.

### V.

■ There being sufficient petitioning creditors, the question remains whether the alleged debtor is "generally not paying such debtor's debts as such debts become due . . .". The petition also alleges that a custodian took possession of debtor's property when the auctioneer was hired to dispose of the office and shop equipment. Such an argument is without merit. The auctioneer clearly had no responsibility for the paying of North County's debts from the proceeds of the sale. His function, therefore, did not fall within the definition of custodian, Section 101(10), Title 11, U.S.C., or of the more traditional duties of the trustee or receiver. 2 Collier on Bankruptcy ¶ 303.11[2] (15th Ed.).

North County listed 98 creditors on its amended answer. The amount of money due those creditors was $47,707.82. This excluded the debt due Chrysler Credit. The evidence showed that these were trade debts, remaining unpaid from about January 1981 through the date of the hearing on April 27, 1981. Utility bills were included. It does not appear that any employees were listed as creditors.

Khan testified that he had sent letters to these creditors indicating that the court proceeding was delaying the "orderly closing of records". The suggestion was that payment would be made if the court proceeding was terminated in favor of North County. The letter was undated but evidence shows that it was sent after the petition was filed.

Khan also testified that he had paid employees and some creditors both before and after the petition was filed. He stated that he had assets, such as parts inventory, which could be sold to produce cash to pay the debts owing. There was some question as to whether this inventory was free of any liens, for there was contradictory testimony as to whether North County had given its attorneys a security interest in the inventory. That issue need not be decided at this time.

■ The debts admittedly owed by North County are trade accounts, for service or goods supplied. The obligations are due at stated times, as for utility services, or when the goods were supplied. North County admits that these debts have not been paid but argues that this Court's order of February 27, 1981 directing it to account for all sales "out of the ordinary course of business" prevented it from continuing in business and paying its debts. The order clearly related to the auction proceeds as debtor was selling assets of the business, not sales in the usual course. But even if the order

were ambiguous, North County made no attempt to obtain clarification until the June hearing nor did it attempt to pay debts by complying with the accounting requirements of the order, not a great burden in light of the list of creditors. North County's argument is not persuasive.

The evidence shows that North County was not paying its debts as they became due. Compare *In re J.V. Knitting Services, Inc.*, 4 B.R. 597 (Bkrtcy.S.D.Fla. 1980), where the Court took as persuasive the debtor's books and records showing substantial overdue accounts and a generally overdrawn bank account. "... in order to determine whether the alleged debtor is generally paying his debts as they become due, the amount of the debts not being paid and the number of creditors not being paid are significant factors." *In re Arker*, 6 B.R. 632, 636 (Bkrtcy.E.D.N.Y.1980). Here there are 98 creditors, apparently every entity owed by North County, except for employees and Chrysler Credit. None had been paid since January 1981. There is no evidence to show that these creditors and the amounts owed are de minimus in comparison to the debts which have been paid. The Court finds that North County is not paying its debts as they become due. *In re Kreidler Import Corporation*, 4 B.R. 256 (Bkrtcy.Md.1980). The fact that North County professed a desire to pay those debts is self serving and cannot support a different conclusion. *In re Hill*, 5 B.R. 79 (Bkrtcy.Minn.1980).

An Order for Relief under the provisions of Chapter 7, Title 11 is ORDERED. The Court appoints Charles E. Rubin, a member of the panel of trustees of this Court, as trustee in this matter.

This Order constitutes findings of fact and conclusions of law as required by Rule 752, Rules of Bankruptcy Procedure.

SO ORDERED this 24th day of August, 1981.